

**U.S. Department of Justice**

*Equal Employment Opportunity Staff*

---

Washington, D.C. 20530

September 25, 2025

Robert Erbe
P.O. Box 848
Tucson, AZ  85702
Via Electronic mail (email) to: robert.erbe@erbelawoffice.com

      Re:      **Complaint of Discrimination**
                  **Tania Nemer v. Department of Justice**
                  **EOI-2025-000443**

Dear Mr. Erbe:

      We write in reference to your client, Tania Nemer (Complainant) and her formal discrimination complaint, Agency No. EOI-2025-000443 (Complaint) filed on April 4, 2025, against the United States Department of Justice (DOJ or Department), Executive Office for Immigration Review (EOIR), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Part 2000e, *et seq.*, (Title VII), and Title 29 of the Code of Federal Regulations (C.F.R.), Part 1614 <u>et seq</u>.

      In your client's Complaint, she alleges that management officials Sirce Owen, Acting Director, and Keith Hunsucker, Acting Chief Immigration Judge, Headquarters, discriminated against the complainant based on her sex (female), sexual orientation, national origin (Lebanon), and reprisal when on February 5, 2025, she was terminated from her position as Immigration Judge, with the Executive Office for Immigration Review, Office of Chief Immigration Judge.

      The EOIR EEO Program has recommended that your client's Complaint be dismissed in its entirety pursuant to 29 C.F.R. § 1614.107(a)(1) for failure to state a cognizable claim, as well as 29 C.F.R. § 1614.107(a)(4), for having previously filed an appeal before the Merit Systems Protection Board (MSPB).  The Department of Justice (DOJ or Department) concurs with the EOIR EEO Program's recommendation and, for the reasons set forth below, your client's Complaint is dismissed.

## PROCEDURAL HISTORY

      Your client made initial contact with EOIR's EEO Program on February 24, 2025, regarding her claim of discrimination.  After an unsuccessful attempt to resolve the matter, the EOIR EEO Program issued you a Notice of Right to File a Complaint of Discrimination on March 31, 2025.  Your client's formal complaint was received in EOIR's EEO Program via electronic mail on April 4, 2025.  On May 19, 2025, the Agency acknowledged receipt of your client's complaint.

      On May 21, 2025, the EOIR EEO Program accepted the above claim for EEO Investigation. On June 17, 2025, the EOIR EEO Program authorized a contract EEO Investigation company to begin the EEO Investigation process.  Subsequently, EOIR's EEO Office produced documentation

Exhibit E
1:25-cv-04170 NEMER v. BONDI et al

demonstrating that Complainant had previously filed an appeal before the Merit Systems Protection Board (MSPB) of her removal, which she voluntarily withdrew and later filed an EEO complaint. Additionally, the Department advised EOIR that under Article II of the Constitution of the United States of America, the Attorney General can terminate inferior officers and therefore, EEO laws do not supersede Article II of the Constitution. As such, your client's EEO Formal Complaint was withdrawn from the EEO Investigation process and has been recommended for dismissal pursuant to 29 C.F.R. § 1614.107(a)(1) and (a)(4).

## **RATIONALE FOR RECOMMENDATION OF DISMISSAL**

1.   Prior MSPB Appeal

According to agency records, your client filed a mixed-case appeal with the MSPB, docketed as CH-0752-25-0566-I-1, concerning her termination, which she later requested to withdraw on March 21, 2025. The MSPB Administrative Judge issued an Order on March 24, 2025, granting your client's request to withdraw her MSPB appeal. Your client then filed the instant mixed-case complaint on April 4, 2025. The rules governing mixed cases are explained within the Board's case processing regulations found at 5 C.F.R. § 1201.154 and within the EEOC's case processing regulations found at 29 C.F.R. §§ 1614.106 and 1614.302(b). The general rule that is explained in both sets of regulations states that an employee may not pursue both a formal EEO complaint and an appeal with the Board based on the same subject matter. Additionally, the regulations conclude that, if both an EEO complaint and an MSPB appeal are filed, whichever is filed first is considered the election, and the employee must proceed in that forum. *See Gomez-Burgos v. Dep't of Def.*, 79 M.S.P.R. (1998), *White v. Dep't of the Army*, EEOC Appeal No. 01A50006 (Dec 22, 2004). Furthermore, the Equal Employment Opportunity Commission (EEOC or Commission) has repeatedly held that even if a complainant voluntarily withdraws their MSPB appeal, they have already made the election to pursue a mixed case appeal before the MSPB, and any subsequent EEO complaint is properly dismissed pursuant to 29 C.F.R. § 1614.107(a)(4). *See Claudia D. v. Dep't of Veterans Affairs*, EEOC Appeal No. 2022001824 (Sept. 11, 2023)(affirming dismissal of EEO complaint where complainant initially filed an MSPB appeal, withdrew the MSPB appeal, and then filed an EEO complaint); *Xavier P. v. Dep't of Agriculture*, EEOC Appeal No. 2019000884 (May 17, 2019) (same).

Consequently, and pursuant to 29 C.F.R. § 1614.107(a)(4), your client's EEO complaint regarding her termination are dismissed from further processing because she raised this issue with the MSPB prior to filing the instant EEO Complaint.

2.   Failure to State a Claim

The federal regulation at 29 C.F.R. § 1614.107 provides, in relevant part:

>    (a)   Prior to a request for a hearing in a case, the agency shall dismiss an entire complaint:
>
>    (1) That fails to state a claim under §§ 1614.103 or 1614.106(a) or states the same claim that is pending before or has been decided by the agency or Commission[.]

To state a claim as an "aggrieved employee" who was subjected to an adverse employment action under 29 C.F.R. § 1614.103, a complainant must allege that he or she was injured in fact. The

EEOC's federal sector case precedent has long defined an "aggrieved employee" as one who suffers a present harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy. *See Diaz v. Dep't of the Air Force*, EEOC Request No. 05931049 (April 21, 1994). As explained further below, however, your status as an inferior officer under Article II of the Constitution renders you an "at-will" employee, and your removal is beyond the purview of Title VII.

Regarding your client's claim that her employment as an Immigration Judge was terminated, this decision was a lawful exercise of the Attorney General's authority under Article II of the Constitution. Article II of the Constitution allows the President and heads of departments exercising his power to remove inferior officers without cause, subject to only narrow exceptions that do not apply to your former position. No statute provides otherwise, and even if it did, the statute would run afoul of Article II.

Article II of the Constitution provides that "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id*. § 3). The President, of course, must rely on others to assist him in executing the laws. *See id.* at 204 ("[T]he Framers expected that the President would rely on subordinate officers for assistance."); *Printz v. United States*, 521 U.S. 898, 922 (1997) (explaining that the President fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints" (internal citations and quotation marks omitted)); *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 666-67 & n.51 (D.D.C. 2018), *aff'd*, 916 F.3d 1047 (D.C. Cir. 2019) (collecting cases). To ensure that those officers faithfully execute the laws on his behalf, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enter. Fund v. Pub. Acct. Oversight Bd.*, 561 U.S. 477, 513-14 (2010). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 514.

While "all of" the "executive Power" is vested in the President, *Seila Law*, 591 U.S. at 203, the heads of departments—and inferior officers below them—may properly exercise that power on his behalf. *See* U.S. Const., Art. II, § 2, cl. 2 (providing that the heads of departments may appoint inferior officers). And when heads of departments exercise executive power, their acts are attributable to the President. *See, e.g., Printz*, 521 U.S. at 922 (the President fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints"); *Wilbur v. U.S. ex rel. Barton*, 46 F.2d 217, 219 (D.C. Cir. 1930) ("It is settled law that the President speaks and acts through the heads of the several departments in relation to subjects which appertain to their respective duties and that the acts of the heads of departments, within the scope of their powers, are in law the acts of the President." (internal quotations to *Wilcox v. Jackson*, 38 U.S. (13 Pet.) 498, 513 (1839), and *Wolsey v. Chapman*, 101 U.S. 755, 769 (1879), omitted)).

When your client was terminated from her position as an Immigration Judge, the Attorney General was exercising the President's executive power. When Congress has tasked a department head with the appointment of an inferior office, "it is ordinarily the department head, rather than the President, who enjoys the power of removal." *Free Enter. Fund*, 561 U.S. at 493.[1] That is because "the power of removal of executive officers [is] incident to the power of appointment." *Myers v. United*

---

[1] Of course, the President may also exercise that power, including through his supervision over the department head. Because of that supervision, the department head's actions in some sense may be fairly attributed to the President. *See Wilcox v. Jackson*, 38 U.S. (13 Pet.) 498, 513 (1839) ("The President speaks and acts through the heads of the several departments, in relation to subjects which appertain to their respective duties.").

*States*, 272 U.S. 52, 119 (1926); *see Duenas v. Garland*, 78 F.4th 1069, 1074 (9th Cir. 2023) ("[T]here can be no doubt that the Attorney General enjoys the power to remove [i]mmigration [j]udges …, just as he or she enjoys the power to appoint them."). Where the head of a department exercises such removal power—as the Attorney General did here—Article II protections apply the same as if the President had terminated Appellant himself.

Here, Complainant was appointed by the head of a department: the Attorney General, the head of the Department of Justice. 28 U.S.C. § 503. As 8 U.S.C. § 1101(b)(4) makes clear, an "immigration judge" is "an attorney whom the Attorney General appoints as an administrative judge within the Executive Office for Immigration Review." You were also supervised by the Attorney General. *See* 8 U.S.C. § 1101(b)(4) ("An immigration judge shall be subject to such supervision and shall perform such duties as the Attorney General shall prescribe."). And you were vested by law with executing the laws of the United States. *See infra* pp. 10-12; 8 U.S.C. § 1229a (vesting immigration judges with power to "conduct proceedings for deciding the inadmissibility or deportability of an alien"). Because you were appointed to your former position as an Immigration Judge by the Attorney General and supervised by the Attorney General in the exercise of executive power, you were presumptively removable from that position without cause under Article II, or otherwise lawfully not converted to a permanent, full-time Immigration Judge. *Seila Law*, 591 U.S. at 228 ("[T]he President's removal power is the rule, not the exception.").

The Supreme Court has recognized only two exceptions to the general rule that an executive branch officer must be removable at will. *See Myers*, 272 U.S. 52. First, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court held that Congress could "give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Second, the Court has held that "Congress could provide tenure protections to certain inferior officers with narrowly defined duties." *Id.* at 204.

Immigration judges do not fit within either of those exceptions. First, immigration judges do not resemble commissioners of a multimember body of experts, balanced along partisan lines, exercising quasi-legislative and quasi-judicial power, as the Supreme Court found was at issue in *Humphrey's Executor*. *Id.* at 216. Immigration judges do not act as a "legislative agency" or "an agency of the judiciary" by "making recommendations" to those bodies. *Id.* at 215-16. Instead, they exercise executive power. Immigration judges are tasked with "conduct[ing] proceedings for deciding the inadmissibility or deportability of an alien," and those proceedings are "the sole and exclusive procedure for determining whether an alien may be admitted to the United States or … removed from the United States." 8 U.S.C. § 1229a(a)(1), (3). To fulfill that responsibility, immigration judges "administer oaths, receive evidence, and interrogate, examine, and cross-examine" witnesses; "issue subpoenas;" and may "sanction … any action (or inaction) in contempt of the judge's proper exercise of authority." *Id.* § 1229a(b)(1). At the conclusion of the proceeding, the immigration judge decides "whether an alien is removable from the United States." *Id.* § 1229a(c)(1)(A). Such activities are plainly executive, rather than legislative or judicial—and "indeed, under our constitutional structure they *must be* exercises of [] the 'executive Power.'" *Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013).

An immigration judge's broad duties also exceed the bounds of the exception for certain inferior officers who perform only limited duties, exemplified by *Morrison v. Olson*, 487 U.S. 654 (1988). In *Morrison*, the Supreme Court concluded that removal protection for an independent counsel who had been appointed by a court of law was constitutional because the independent counsel had "limited jurisdiction" and "lack[ed] policymaking or significant administrative authority." *Id.* at

691. While independent counsels' jurisdiction under the (now-expired) statute at issue in *Morrison* was limited to investigating and prosecuting specific matters referred by the Attorney General, *id.* at 660-63, immigration judges have broad authority to "conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). Far from "lacking policymaking or significant administrative authority," *Morrison*, 487 U.S. at 691, immigration judges "shall exercise their independent judgment and discretion" in conducting hearings to decide inadmissibility or deportability. 8 C.F.R. § 1003.10. And in doing so, they make decisions that are subject to only limited appellate review in an area that implicates core executive power—the federal government's authority to enforce the immigration laws. *See, e.g.*, *Patel v. Garland*, 596 U.S. 328, 337-40 (2022) (discussing 8 U.S.C. § 1252(a)(2)); *Arizona v United States*, 567 U.S. 387, 395-97 (2012); 8 C.F.R. § 1003.1(b) (setting forth limited circumstances in which the Board of Immigration Appeals ("BIA") may review decisions of immigration judges).

For example, "negative" decisions of immigration judges in "credible fear review" proceedings are not subject to further review and result in the "expedited removal' of the alien. *See* 8 C.F.R. § 1208.30(g)(2)(iv). Likewise, no direct appeal lies from an immigration judge's decision to order an alien's removal from the United States in absentia. *See Matter of Guzman-Arguera*, 22 I&N Dec. 722, 722 (BIA 1999). Even if review is available, if an alien does not appeal an immigration judge's removal decision, the immigration judge's decision becomes a final administrative order of removal. *See* 8 U.S.C. § 1101(a)(47); 8 C.F.R. § 1241.1. Moreover, immigration judges also have the authority to grant aliens a wide range of immigration benefits, including asylum, which can place them on a path towards United States citizenship and render them eligible for numerous public benefits at great expense to the American taxpayer. *See* 8 C.F.R. § 1208.2(b). By wielding significant immigration authority, often unencumbered by further review, immigration judges effectively determine the policy and enforce the laws of the United States as delegates of the Attorney General. 8 C.F.R. § 1003.10(a) ("Immigration judges shall act as the Attorney General's delegates in the cases that come before them."); *Free Enter. Fund*, 561 U.S. at 484.

The significant responsibilities of immigration judges demonstrate that they are not "part of the broad swath of lesser functionaries in the Government's workforce"; they are officers of the United States who exercise part of the President's executive power. *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 245 (2018). In fact, "any appointee" to a continuing position "exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States'" within the meaning of Article II. *Buckley v. Valeo*, 424 U.S. 1, 126 (1976). The Securities and Exchange Commission's administrative law judges meet that standard; they exercise "significant discretion" in conducting "fair and orderly adversarial hearings" and issue decisions with legal effect. *Lucia v. SEC*, 585 U.S. 237, 248 (2018). As the Ninth Circuit squarely held, immigration judges do, too. Immigration judges' responsibilities are legally defined and continuous and involve substantial authority to conduct adversarial hearings in removal proceedings. *See Duenas v. Garland*, 78 F.4th 1069, 1073 (9th Cir. 2023) (citing 8 U.S.C. § 1229a). As such, any restriction on the removal of an immigration judge from office would impermissibly encroach on the President's otherwise "unrestricted removal power" with respect to "inferior officers." *Seila Law LLC*, 591 U.S. at 204; *see also Exela Enter. Sols., Inc. v. Nat'l Lab. Rels. Bd.*, 32 F.4th 436, 445 (5th Cir. 2022) ("The President's power to remove is essential to the performance of his Article II responsibilities and control over the Executive Branch."). To hold otherwise would unduly restrict the "executive power" which is "vested in a President," who must "take care that the laws be faithfully executed." U.S. Const., Art. II, § 1, cl. 1; § 3. The Attorney General's decision to terminate Appellant's appointment as Immigration Judge—a position in which Appellant exercised significant executive power—was a proper exercise of Article II authority.

As stated above, neither the Civil Service Reform Act of 1978, nor any other statute, e.g., Title VII, provides immigration judges with protection from removal at-will by the President or the Attorney General. First, no statute specifically provides that immigration judges are protected from at-will removal. A foundational canon of statutory construction is *expressio unius est exclusio alterius*—the expression of one thing implies the exclusion of others. Congress has explicitly provided removal protections for administrative law judges. *See* 5 U.S.C. § 7521(a) (requiring "good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board" for adverse employment action). Yet immigration judges enjoy no similar statutory grant of protection. 8 U.S.C. § 1101(b)(4) merely states that immigration judges are "attorneys whom the Attorney General appoints," with no mention of tenure, term limits, or removal conditions. The absence of protective language in Title 8 suggests Congress, when enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, or elsewhere did not intend to restrict the Attorney General's removal power over immigration judges. Indeed, the D.C. Circuit has made clear that "Congress must make it clear in a statute if it wishes to restrict the President's removal power." *Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023). The right to remove an officer "should not be held to be taken away by mere inference or implication" *Shurtleff v. United States*, 189 U.S. 311, 315 (1903).

Where, as here, a federal officer or employee serves at will—that is, as explained above, she may be removed for "any constitutionally permissible reason or for no reason at all"—the employee "has no property interest" in her employment. *Esparraguera v. Dep't of the Army*, 101 F.4th 28, 33 (D.C. Cir. 2024) (citations omitted). You are therefore, as an individual "subject to at-will dismissal," "lack[s] the statutorily-protected property interest necessary to ground a due process challenge." *Griffith v. Lanier*, 521 F.3d 398, 404 (D.C. Cir. 2008); *see also Chmielewski v. EPA*, 2022 WL 22902407, at *3 (D.D.C. July 28, 2022).

Further, this makes sense given the constitutional structure. As explained above, the President and his immediate subordinates must be able to act with dispatch and make important, inherently discretionary judgment calls regarding the individuals who exercise executive power on his behalf. They must be able to do so quickly, as *all of* the executive power belongs to the President—he cannot be hamstrung with officials whom he no longer trusts wielding executive power while he waits for some notice period to pass or hearing to transpire. *Cf. Trump v. Wilcox*, No. 24A966, 2025 WL 1464804, at *1 (2025) ("[T]he Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."). And because these key personnel decisions regarding officers wielding executive power on the President's behalf involve "sensitive and inherently discretionary judgment call[s]," there is no meaningful standard "to review the substance of such a judgment." *Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988) (holding that the Board did not have authority to review substance of underlying decision to deny or revoke security clearance in the course of reviewing an adverse action).

Your client's appeal rights for the dismissal cited in this letter are noted below.

## FINAL AGENCY DECISION

It is the decision of the Department to dismiss the above-referenced Complaint of discrimination, Agency No. EOI-2025-000443, pursuant to 29 C.F.R. § 1614.107(a)(1) and (a)(4). Your client is hereby notified that this is the final decision of the Department in this matter. In accordance with 29 C.F.R. § 1614.110(b), we are providing you with a copy of this decision and a

notice of your right to appeal the final action to the EEOC, the right to file a civil action in Federal District Court, the name of the proper defendant in any such lawsuit, and the applicable time limits for appeals and lawsuits.

## **NOTICE OF APPEAL RIGHTS**

Pursuant to 29 C.F.R. § 1614.401 et seq., your client is hereby notified that this is the final action of the Department in this matter.  Your client has the right to appeal this final action within 30 calendar days of receipt of this final agency decision.

The EEOC highly recommends that your client file their appeal request online using the EEOC Public Portal at: https://publicportal.eeoc.gov/.  If your client does not already have Public Portal credentials, your client will be asked to register by entering your contact information and confirming your email address.  **When filing an appeal, please select "Executive Office for Immigration Review" as the agency within the Department of Justice dropdown menu.**  During the adjudication of any appeal, one can also use the Public Portal to view and download the appeal record.

Alternatively, if your client chooses not to use the portal to file an appeal, your client must make a written request (Appeal Form enclosed) to the EEOC office at the following address:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

or hand-deliver to:

Equal Employment Opportunity Commission
Office of Federal Operations
Compliance and Control Division
Federal Sector Programs
One NOMA Station
131 M Street, NE
Suite 5SW12G
Washington, D.C.  20507

or send via facsimile to: (202) 663-7022.

In addition, a copy of the appeal must be sent to:

Alita J. Taylor
Acting EEO Director
U.S. Department of Justice
Executive Office for Immigration Review
Office Of the Director
Equal Employment Opportunity Program
5107 Leesburg Pike, Suite 2500
Falls Church, VA 22041
EOIR.EEOMAILBOX@USDOJ.GOV

In or attached to the appeal, your client must certify the date and method by which you notified both the EEOC and the EOIR EEO Program of the appeal. This certification must be in the appeal or in a separate attached sheet. Enclosed is a Notice of Appeal/Petition (EEOC Form 573) in the event you decide to appeal the final agency decision. If your client files an appeal by mail, please note the processing of the request could be delayed because documents submitted via mail may take longer.

You have the right to file a civil action in an appropriate United States District Court. If you choose to file a civil action, your client must do so:

- Within 90 days of receipt of the final action on an individual or class complaint, if no appeal has been filed;
- Within 90 days of receipt of the Commission's final decision on an appeal;
- After 180 days from the date of filing of an appeal with the Commission, if there has been no final decision by the Commission; or
- After 180 days from the date of filing an individual or class complaint, if an appeal has not been filed and final action has not been taken.

Your client must name the person who is the official agency head or department head as the defendant in the civil action. Agency or department means the national organization and not the local office, facility, or department in which you might work. In this case, your client must name the Attorney General as the defendant. Failure to provide the name or official title of the agency head or department head may result in dismissal of your case.

If your client decides to file a civil action and cannot afford the services of an attorney, you may request that the court appoint an attorney to represent you. The court has discretionary authority to appoint counsel for your client. The court may also permit your client to file the action without payment of fees, costs, or other security. The granting or denial of the request is within the sole discretion of the court. Filing a request for an attorney does not extend the time for you to file a civil action. Both the request and the civil action **MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS** of the date you receive the EEOC's final decision.

FOR THE DEPARTMENT

*Joel A. Kravetz*

Joel Kravetz, Acting Director
Equal Employment Opportunity Staff
Justice Management Division

Enclosure

cc: Tania Nemer
6902 Walters Road
Hudson, OH 44236
nemerlaw@gmail.com

# NOTICE OF APPEAL/PETITION
# TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS
P.O. Box 19848
Washington, DC 20036

**Complainant Information:** (Please Print or Type)

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code): | |
| E-mail address (if any): | |

**Attorney/Representative Information (if any):**

| | |
|---|---|
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

**General Information:**

| | |
|---|---|
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the | |

Exhibit E
1:25-cv-04170 NEMER v. BONDI et al

| | |
|---|---|
| complaint arose: | |
| Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | \_\_\_\_\_Yes;  Date Received _____(Remember to attach a copy)<br>_____No<br>\_\_\_\_\_This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, <u>another</u> agency, or through any <u>other</u> administrative or collective bargaining procedures? | \_\_\_\_No<br>\_\_\_\_Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | \_\_\_\_\_No<br>\_\_\_\_\_Yes **(Attach a copy of the civil action filed)** |

**NOTICE**: Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC **and** with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| | |
|---|---|
| Signature of complainant or complainant's representative: | |
| Date: | |

**EEOC Form 573 REV 1/01**

---

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1. **FORM NUMBER/TITLE/DATE**: EEOC Form 573, Notice of Appeal/Petition, January 2001
2. **AUTHORITY**: 42 U.S.C. § 2000e-16
3. **PRINCIPAL PURPOSE**: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently

4. **ROUTINE USES**: Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.

5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION**: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

---

Send your appeal to:

The Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

---

Figure 4-17 Notice of Appeal/Petition to Equal Employment Opportunity Commission

(continued from previous page) adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.