UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TANIA NEMER, <br><br> Plaintiff, <br><br> v. <br><br> PAMELA J. BONDI, Attorney General, et al., <br><br> Defendants. | Civil Action No. 25-4170 (SLS) |

**MOTION TO DISMISS AND**
**MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................... i

Table of Authorities ........................................................................................................... ii

Background ........................................................................................................................ 1

Legal Standards ................................................................................................................. 3

Argument .......................................................................................................................... 4

       I.      Plaintiff Has Not Stated a Title VII Claim ................................................... 4

             A.      Stating A Discrimination Claim Under Title VII ........................................ 4

             B.      Plaintiff Has Failed to Plausibly Allege Causation ..................................... 6

       II.     Plaintiff Has Not Stated a First Amendment Claim ..................................... 8

             A.      Plaintiff Does Not Plausibly Allege That Her Speech or Political Affiliation Caused Her Dismissal .............................................................. 8

             B.      Nor Does The Complaint State A Claim Under *Pickering-Elrod-Branti*. 10

       III.    Plaintiff's Termination Was a Proper Exercise of Article II Authority ................ 17

       IV.    Plaintiff's Declaratory Judgment Claim Should Be Dismissed ........................... 24

       V.     Plaintiff Is Not Entitled To Mandamus Relief ........................................... 25

Conclusion ....................................................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**

*ADEA. Barnett v. PA Consulting Grp., Inc.*,
715 F.3d 354 (D.C. Cir. 2013) ................................................................ 5

*Ali v. Rumsfeld*,
649 F.3d 762 (D.C. Cir. 2011) ............................................................ 24

*Allied Chem. Corp. v. Daiflon, Inc.*,
449 U.S. 33 (1980) ............................................................................. 26

*Am. Hosp. Ass'n v. Burwell*,
812 F.3d 183 (D.C. Cir. 2016) ............................................................ 25

*Arizona v United States*,
567 U.S. 387 (2012) ........................................................................... 21

*Arlington v. FCC*,
569 U.S. 290 (2013) ........................................................................... 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................... 3, 4

*Baumann v. District of Columbia*,
795 F.3d 209 (D.C. Cir. 2015) ...................................................... 10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................. 3, 4, 10

*Branti v. Finkel*,
445 U.S. 507 (1980) ........................................................................... 12

*Brown v. District of Columbia*,
251 F. Supp. 2d 152 (D.D.C. 2003) ...................................................... 5

*Brown v. Sessoms*,
774 F.3d 1016 (D.C. Cir. 2014) ............................................................ 6

*Buckley v. Valeo*,
424 U.S. 1 (1976) ............................................................................... 22

*Cheney v. U.S. District Court*,
542 U.S. 367 (2004) ........................................................................... 27

*Claudia D. v. Dep't of Veterans Affairs*,
EEOC Appeal No. 2022001824 ............................................................ 3

*Connick v. Myers*,
461 U.S. 138 (1983) ...................................................................... 11-12

*Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*,
709 F.2d 1521 (D.C. Cir. 1983) ................................................................ 25

*Dep't of State v. Munoz*,
602 U.S. 899 (2024) ................................................................................ 24

*Duenas v. Garland*,
78 F.4th 1069 (9th Cir. 2023) (finding "Immigration Judges and BIA members are inferior officers") ................................................................................ 16, 22

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*,
485 U.S. 568 (1988) ................................................................................ 24

*Elrod v. Burns*,
427 U.S. 347 (1976) ........................................................................... 12, 13

*Exela Enter. Sols., Inc. v. Nat'l Lab. Rels. Bd.*,
32 F.4th 436 (5th Cir. 2022) ..................................................................... 22

*Ford v. Mabus,*
629 F.3d 198 (D.C. Cir. 2010) .................................................................... 5

*Free Enter. Fund v. Pub. Co. Acctg. Oversight Bd.*,
561 U.S. 477 (2010) ................................................................................ 17

*Garcetti v. Ceballos,*
547 U.S. 410 (2006) ................................................................................ 11

*Grossart v. Dinaso*,
758 F.2d 1221 (7th Cir. 1985) .................................................................... 13

*Haig v. Agee,*
453 U.S. 280 (1981) ................................................................................ 24

*Hall v. Ford,*
856 F.2d 255 (D.C. Cir. 1988) ...................................................... 12, 13, 14, 15

*Harris v. Bessent*,
No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) .................................. 27

*Harris v. D.C. Water &Sewer Auth.,*
172 F. Supp. 3d 253 (D.D.C. 2016) ............................................................... 5

*Hollingsworth v. Vilsack,*
Civ. A. No. 23-2427 (LLA), 2024 WL 4332118 (D.D.C. Sept. 27, 2024) ................... 6

*Holmes v. Austin,*
Civ. A. No. 23-2415, 2024 WL 4345829 (D.D.C. Sept. 30, 2024) .......................... 8

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935) ................................................................................ 19

*In re Bluewater Network*,
234 F.3d 1305 (D.C. Cir. 2000) ............................................................................. 26

*In re Cheney*,
406 F.3d 723 (D.C. Cir. 2005) (en banc) ............................................................... 26

*In re Grand Jury Investigation*,
315 F. Supp. 3d 602 & n.51 (D.D.C. 2018) ........................................................... 17

*Jackler & Jaroch Consolidation, v. Dep't of Just., et al.,*
No. CF-0752-26-0069-I-1, 2026 WL 789485 (M.S.P.B. Mar. 20, 2026) .................. 19, 20, 22

*Jimenez Fuentes v. Torres Gaztambide*,
807 F.2d 236 (1st Cir. 1986) (en banc) ................................................................. 13

*Joyner v. Morrison & Foerster LLP*,
140 F.4th 523 (D.C. Cir. 2025) ................................................................................ 7

*Keith v. U.S. Gov't Accountability Off.,*
Civ. A. No. 21-2010, 2022 WL 3715776 (D.D.C. Aug. 29, 2022) .......................... 7

*Kennedy v. Braidwood Management*,
606 U.S. 748 (2025) ......................................................................................... 18, 23

*Krodel v. Young*,
748 F.2d 701 (D.C. Cir. 1984) ................................................................................. 5

*Lane v. Franks*,
573 U.S. 228 (2014) ............................................................................................... 10

*LeFande v. District of Columbia*,
841 F.3d 485 (D.C. Cir. 2016) ............................................................................... 11

*Levinsky v. Dep. Of Justice*,
99 M.S.P.R 574 (2005) ........................................................................................... 23

*Lucia v. SEC*
585 U.S. 237 (2018) ........................................................................................... 16, 22

*Marbury v. Madison*,
1 Cranch 137 (1803) .............................................................................................. 26

*Matter of Guzman-Arguera*,
22 I&N Dec. 722 (BIA 1999) ................................................................................. 21

*Maynard v. Architect of the Capitol*,
544 F. Supp. 3d 64 (D.D.C. 2021) ......................................................................... 25

*McDonnell Douglas Corp. v. Green*
411 U.S. 792 (1973) ................................................................................................. 5

*Mississippi v. Johnson*,
    4 Wall. 475 (1867) ........................................................................................ 27

*Morrison v. Olson*,
    487 U.S. 654 (1988) ................................................................................. 20, 21

*Myers v. United States*,
    272 U.S. 52 (1926) ........................................................................................ 18

*Navab-Safavi v. Glassman*,
    637 F.3d 311 (D.C. Cir. 2011) ................................................................. 10, 11

*Nurriddin v. Bolden*,
    818 F.3d 751 (D.C. Cir. 2016) ....................................................................... 6

*Orange v. D.C.,*
    59 F.3d 1267 (D.C. Cir. 1995)........................................................................ 11

*Papasan v. Allain*,
    478 U.S. 265 (1986) ........................................................................................ 4

*Patel v. Garland*,
    596 U.S. 328 (2022) ...................................................................................... 21

*Pearson v. D.C.*,
    644 F. Supp. 2d 23 (D.D.C. 2009) ................................................................ 15

*Pickering v. Board of Education*,
    391 U.S. 563 (1968) ................................................................................. 10, 11

*Printz v. United States*,
    521 U.S. 898 (1997) ................................................................................. 17, 18

*Rankin v. McPherson*,
    483 U.S. 378 (1987) ....................................................................................... 11

*Royall v. Nat'l Ass'n of Letter Carriers*,
    548 F.3d 137 (D.C. Cir. 2008) ........................................................................ 5

*Seila Law L.L.C. v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020) ................................................................... 17, 18, 19, 22

*Severino v. Biden*,
    71 F.4th 1038 (D.C. Cir. 2023) ..................................................................... 23

*SS&T, LLC v. Am. Univ.,*
    Civ. A. No. 19-0721 (JDB), 2020 WL 1170288 (D.D.C. Mar. 11, 2020) ................................ 6

*Townsend v. United States*,
    236 F. Supp. 3d 280 (D.D.C. 2017) ................................................................ 6

*United States v. Arthrex, Inc.*
  594 U.S. 1 (2021) ............................................................................................ 16

*United States v. Duell,*
  172 U.S. 576 (1899) ........................................................................................ 27

*United States v. Nat'l Treasury Emps. Union*
  513 U.S. 454–66 (1995) ................................................................................... 11

*Waters v. Churchill,*
  511 U.S. 661 (1994) ........................................................................................ 10

*Wiener v. United States,*
  357 U.S. 349 (1958) ........................................................................................ 19

*Wilbur v. U.S. ex rel. Barton,*
  46 F.2d 217 (D.C. Cir. 1930) .......................................................................... 18

*Wilburn v. Robinson,*
  480 F.3d 1140 (D.C. Cir. 2007) ...................................................................... 11

*Xavier P. v. Dep't of Agriculture,*
  EEOC Appeal No. 2019000884 (May 17, 2019) ............................................. 3

## Statutes & Regulations

5 U.S.C. § 7521 ...................................................................................................... 23
8 C.F.R. § 1003.1 ................................................................................................... 21
8 C.F.R. § 1003.10 .................................................................................. 16, 17, 18, 21
8 C.F.R. § 1208.2 ................................................................................................... 21
8 C.F.R. § 1208.30 ................................................................................................. 21
8 C.F.R. § 1241.1 ................................................................................................... 21
8 U.S.C. § 1101 ............................................................................................... 18, 23
8 U.S.C. § 1229a ...................................................................................... 16, 18, 20, 21
13 Pet. 230  (1839) ............................................................................................ 26-27
28 U.S.C. §1361 .................................................................................................... 25
28 U.S.C. § 451 ..................................................................................................... 25
28 U.S.C. § 503 ..................................................................................................... 18
28 U.S.C. § 2201 ............................................................................................... 24-25
29 C.F.R. § 1614.107 ...................................................................................... 2, 3, 8, 9

Defendants, the Attorney General and the Department of Justice ("Department"), respectfully move to dismiss the complaint filed by Plaintiff, Tania Nemer (ECF No. 1). The complaint, which is heavy on conclusory statements and speculation and light on allegations of fact, does not plausibly allege that Plaintiff is entitled to relief under Title VII of the Civil Rights Act of 1964 ("Title VII") or the First Amendment of the U.S. Constitution. And regardless, because Plaintiff was an immigration judge—an inferior officer exercising significant executive power and discretion—she was removable at will by the Attorney General under Article II of the Constitution. The Complaint should be dismissed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim.

## BACKGROUND[1]

Plaintiff Tania Nemer was born to parents who had immigrated to America from Lebanon and is a dual citizen of the United States and Lebanon. Compl. (ECF No. 1) ¶ 28. Plaintiff alleges that her dual citizenship is a fact which was well known to the Department of Justice. *Id.* In 2019, Plaintiff unsuccessfully ran for a position as a judge for the Stow Municipal Court (Ohio), on a ticket associated with the Democratic Party. *Id.* ¶ 29. She alleges that this fact was also well known within the Department. *Id.* Plaintiff is female. *Id.* ¶ 5. Plaintiff is Arab. *Id.* ¶ 76.

Plaintiff was appointed by the Attorney General as an immigration judge within the Executive Office for Immigration Review ("EOIR") in the Department on July 10, 2023. Compl. (ECF No. 1) ¶ 31. She was terminated on February 5, 2025, while still in her trial period of

---

[1] Defendants dispute many of Plaintiff's factual allegations in the Complaint (ECF No. 1), and their recitation of them here in no way implies agreement that they are true. Rather, solely for purposes of adjudicating the instant motion to dismiss, the Court can accept them as true.

employment, by the Attorney General through a letter by former Acting Director Sirce Owen. [2] *Id.* ¶¶ 18, 33. The termination letter provided to Plaintiff stated that "EOIR has determined that retaining you is not appropriate, and we thank you for your service." *Id.* ¶ 39; Ltr. (ECF No. 1-5). The Department later clarified that Plaintiff had been terminated pursuant to the Attorney General's authority under Article II of the Constitution." *Id*. ¶ 60.

On February 5, 2025, Plaintiff was one of three immigration judges in the Cleveland Immigration Court who were serving a trial period. Compl. (ECF No. 1) ¶ 33. The other two immigration judges—both of whom were male and were not of Lebanese origin—were not terminated on February 5, 2025. *Id.* Plaintiff was part of a class of thirty-eight other immigration judges hired in July 2023. *Id.* ¶ 34. Of that class, Plaintiff alleges that she was the only one of Lebanese origin and the only immigration judge with dual citizenship to an Arab country. *Id.* At the time of her termination in February, none of the other thirty-seven non-Lebanese immigration judges had been terminated. *Id.*

On February 24, 2025, Plaintiff initiated the equal employment opportunity ("EEO") process by seeking counseling. Compl. (ECF No. 1) ¶ 42. Plaintiff then filed an EEO complaint with the Department. *Id.* ¶ 44. At the conclusion of the EEO investigation, and through a decision dated September 25, 2025 by the Department's EEO office, the Department concluded that Plaintiff had not been subject to unlawful discrimination, stated that her termination "was a lawful exercise of the Attorney General's authority under Article II of the Constitution," and that she failed to state a claim under 29 C.F.R. § 1614.107. *Id*. ¶ 60. In addition, the Department also concluded that due to Plaintiff's initial election to pursue a mixed-case appeal before the Merit

---

[2] Plaintiff was actually terminated on February 4, 2025, by the Acting Attorney General, but the termination was not effectuated until the next day.

Systems Protection Board ("MSPB") prior to filing her EEO complaint, she was required to proceed in the forum of initial election and—despite her voluntary withdrawal of the MSPB appeal—the dismissal of her EEO complaint was proper under 29 C.F.R. § 1614.107(a)(4), since she was required to proceed before the MSPB as it was filed before her EEO complaint; *Claudia D. v. Dep't of Veterans Affairs*, EEOC Appeal No. 2022001824 (Sept. 11, 2023) (affirming dismissal of EEO complaint where complainant initially filed an MSPB appeal, withdrew the MSPB appeal, and then filed an EEO complaint); *Xavier P. v. Dep't of Agriculture*, EEOC Appeal No. 2019000884 (May 17, 2019) (same).

On December 1, 2025, Plaintiff initiated this civil action by filing a complaint. Compl. (ECF No. 1). The Complaint purports to state five claims: (1) violation of Title VII for discrimination on the basis of sex (female), *id.* ¶¶ 66-72; (2) violation of Title VII for discrimination on the basis of national origin (Lebanese), *id.* ¶¶ 73-79; (3) violation of the First Amendment for termination based on Plaintiff's political activity and affiliation (Democrat), *id.* ¶¶ 80-84; (4) request for a declaration of rights under the Declaratory Judgment Act, *id.* ¶¶ 85-85; and (5) a request for a writ of mandamus commending Defendants to return Plaintiff to office, *id.* ¶¶ 87-88.

## LEGAL STANDARDS

Under Rule 12(b)(6), the Court may dismiss a complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pled therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *See Iqbal*, 556 U.S.

at 678. However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677. The pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557.

**ARGUMENT**

## I.     Plaintiff Has Not Stated a Title VII Claim

### A.     Stating A Discrimination Claim Under Title VII

To establish a *prima facie* case of discrimination, a plaintiff must show that he or she: "(1) belongs to a protected class; (2) suffered an adverse employment action; and (3) that the

- 4 -

unfavorable action gives rise to an inference of discrimination." *Brown v. District of Columbia*, 251 F. Supp. 2d 152, 160 (D.D.C. 2003); *Krodel v. Young*, 748 F.2d 701, 705 (D.C. Cir. 1984) ("an individual plaintiff claiming disparate treatment must first make out a *prima facie* case—*i.e.*, must demonstrate sufficient facts to create a reasonable inference that race, sex or age was a factor in the employment decision at issue.").

Absent direct evidence of discrimination, a plaintiff may prove discrimination through circumstantial evidence using the familiar three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973), which generally applies at summary judgment, *see, e.g.*, *id.* (applying framework to Title VII claim); *Ford v. Mabus*, 629 F.3d 198, 201 (D.C. Cir. 2010) (applying framework to an ADEA claim); *Krodel v. Young,* 748 F.2d at 705 (same).  After a plaintiff has established a *prima facie* case of discrimination or retaliation, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the action. *McDonnell Douglas*, 411 U.S. at 802-03. Where an employer offers "clear and reasonably specific nondiscriminatory reasons for the adverse employment action, the court need not decide whether the plaintiff has made out a prima facie case." *Royall v. Nat'l Ass'n of Letter Carriers*, 548 F.3d 137, 144 (D.C. Cir. 2008) (internal quotation marks and citation omitted). The plaintiff then bears the burden of proving that the defendant's proffered reason is pretextual. *Harris v. D.C. Water &Sewer Auth.*, 172 F. Supp. 3d 253, 268 (D.D.C. 2016). The standard for alleging a claim under Title VII is the same as that for alleging a claim under the ADEA. *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) ("We consider [plaintiff's] age . . . discrimination claim[ ] in the same way we analyze Title VII claims.").

At the motion-to-dismiss stage, the guiding lodestar is, assuming the truth of the factual allegations, taken collectively, whether the inferences of discrimination drawn by the plaintiff are

reasonable and plausibly supported. *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017); *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (noting that court "need not, however 'accept inferences drawn by [a] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint.'" (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

### B.    Plaintiff Has Failed to Plausibly Allege Causation

Plaintiff has failed to plausibly allege that she was terminated either because of her sex (female) or national origin (Lebanese).  The complaint simply asserts that her two male colleagues were not terminated at the same time that she was, that she was the only immigration judge of Lebanese national origin hired in July 2023, and that none of the other members of her hiring class have been terminated—and goes on to suggest that these allegations are sufficient to support a plausible inference of causation.  Compl. (ECF No. 1) ¶¶ 33-34, 69, 75-77.  This is insufficient to state a claim.

Two ways to meet the causation burden are through direct evidence of discrimination and by allegations regarding the treatment of comparators. *Hollingsworth v. Vilsack*, Civ. A. No. 23-2427 (LLA), 2024 WL 4332118, at *10 (D.D.C. Sept. 27, 2024).  To plead causation through comparators, the plaintiff can "show[] 'that she was treated differently from similarly situated employees who are not part of the protected class.'" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). While the burden is "not onerous" at the motion-to-dismiss stage, it requires more than the bald assertion that there is a similarly situated comparator.  *SS&T, LLC v. Am. Univ.*, Civ. A. No. 19-0721 (JDB), 2020 WL 1170288, at *4 (D.D.C. Mar. 11, 2020) (quoting *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017)). "A plaintiff's assertion that [she] is similarly situated to others is just a legal conclusion—and a legal conclusion is never enough." *Id*. at *5 (cleaned up; quoting *Bekkem*

*v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019)); *see Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 531 (D.C. Cir. 2025) ("Each complaint we have found sufficient to proceed on a comparator theory has contained allegations that a comparator was similarly positioned to the plaintiff in at least some relevant respects, and included enough detail that we could plausibly infer that discrimination caused the defendant's differential treatment of the plaintiff."); *Keith v. U.S. Gov't Accountability Off.*, Civ. A. No. 21-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (granting a motion to dismiss for failure to state a claim and reasoning that "to plausibly plead the causation element [through similarly situated comparators], [the plaintiff] must allege some facts to ground a reasonable inference that the plaintiff was in fact similarly situated to comparator employees").

Here, Plaintiff relies solely on the fact that other immigration judges who were not female or Lebanese were not terminated at the same time that she was, and makes no other allegations supporting the plausible inference that those other individuals were similarly situated to her.[3] *See* Compl. (ECF No. 1) ¶¶ 33-34, 69, 75-77. For example, while Plaintiff alleges that the Department cited her driving record and tax lien as part of their justification for her termination during the EEO investigation, *id.* ¶¶ 53-57, she does not address whether the other immigration judges who retained their positions had analogous issues with their background checks, *see generally*, Compl. (ECF No. 1). Plaintiff's conclusory and speculative assertion that these other immigration judges were similarly situated to her, simply because they held the same title, is insufficient to plausibly allege that her disparate treatment was caused by her sex or national origin. *See e.g., Joyner*, 140 F.4th at 531 ("[I]t cannot be enough to simply allege that the plaintiff was treated differently from a

---

[3] The other immigration judges who were hired in the same class as Plaintiff were presumably also in their trial employment period, but Plaintiff makes no allegations regarding whether the other immigration judges in Cleveland were in their trial period.

'similarly situated' comparator, without additional allegations showing the comparators are in fact 'similarly situated' in some meaningful respect."); *Holmes v. Austin*, Civ. A. No. 23-2415 2024 WL 4345829, *6 (D.D.C. Sept. 30, 2024) (citing *Twombly*, 550 U.S. at 555; holding that plaintiff failed to adequately plead specific facts where the plaintiff merely alleged that younger employees did not receive letters of counseling without specifying whether those younger employees had similar performance deficiencies).

*   *   *

Additionally, Plaintiff initially pursued her challenge to her termination as a "mixed-case" appeal before the MSPB, though she later withdrew her appeal. Ltr. (ECF No. 1-8) at 2. Because she initiated her claim before the MSPB, she must complete MSPB exhaustion before seeking any review in federal court. *See* 29 C.F.R. § 1614.107(a)(4) ("Where the complainant has raised the matter in a negotiated grievance procedure that permits allegations of discrimination or in an appeal to the Merit Systems Protection Board and § 1614.301 or § 1614.302 indicates that the complainant has elected to pursue the non-EEO process"). Plaintiff cannot shift to the Equal Employment Opportunity process mid-case. Thus, Plaintiff has failed to exhaust administrative remedies.

## II.    Plaintiff Has Not Stated a First Amendment Claim

Plaintiff has also failed to plausibly allege that she was terminated because of her prior political associations in violation of the First Amendment.

### A.    Plaintiff Does Not Plausibly Allege That Her Speech or Political Affiliation Caused Her Dismissal

As a threshold matter, the complaint contains no allegations of fact supporting the plausible conclusion that her history of running for office as a Democrat was a factor in Defendants' decision to terminate her. *See generally*, Compl. (ECF No. 1). Plaintiff simply alleges that she had

- 8 -

previously run for office as a Democrat and that fact was "well known within the Department." *Id.* ¶ 5, 29. The Department of Justice has over 115,000 employees spread around the world. *See* U.S. Department of Justice FY 2026 Contingency Plan, at 2.[4] EOIR itself has over 2,000 employees in offices stretching from Hawaii to Puerto Rico. The idea that any characteristic of Plaintiff was "well known" within either the Department of Justice or EOIR is both conclusory and rebutted by common sense.

The complaint then makes the conclusory assertion that "the Department singled out [Plaintiff] because of her well-known political activity and partisan affiliation" in violation of the First Amendment. *Id.* ¶ 84. She does speculate that the Acting Chief Immigration Judge and "senior officials at the Department of Justice, including the then-Acting Attorney General, either knew about or learned about [Plaintiff]'s political affiliation and partisan activity" but offers nothing more than the fact that the Acting Chief Immigration Judge had, on one occasion, noted to Plaintiff that they lived in the same city and "information and belief" in support of that assertion. *Id.* ¶¶ 29, 82. The fact that the Acting Chief Immigration Judge may have commented that they lived in the same city does not mean that senior DOJ officials knew or learned about her political affiliation or partisan activity. Indeed, Plaintiff stretches a comment about her city of residence to implausibly make an inference that the Acting Chief Immigration Judge somehow "had seen her campaign signs in his hometown, demonstrating that senior EOIR officials were aware of her Democratic political activities." *Id.* ¶ 82. Most significantly, Plaintiff makes no plausible allegation that the only two individuals involved in her removal—the Acting EOIR Director and

---

[4]     *Available*                                                                                          *at* https://www.justice.gov/jmd/media/1377216/dl#:~:text=Agency%20Summary%20The%20total %20number%20of%20agency,1)%2C%20representing%2089%25%20of%20DOJ%20on%2Dbo ard%20employees.

the Acting Attorney General—knew anything about her or her political history. These conclusory assertions regarding the purported causal connection between Plaintiff's political affiliation and her termination are insufficient to state a claim. *Twombly*, 550 U.S. at 557 (holding that, where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'").[5]

### B. Nor Does The Complaint State A Claim Under *Pickering-Elrod-Branti*

#### 1. Freedom Of Speech And Public Employment

As a general matter, the Supreme Court's decision in "*Pickering* [*v. Board of Education,* 391 U.S. 563 (1968)] and its progeny continue to be the meter by which the First Amendment rights of public employees are measured." *Baumann v. District of Columbia*, 795 F.3d 209, 215 (D.C. Cir. 2015) (citations omitted); *see also, e.g., Lane v. Franks*, 573 U.S. 228 (2014). Under this framework, individuals do not forfeit their First Amendment rights when they accept government employment, but the government "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Navab-Safavi v. Glassman,* 637 F.3d 311, 315 (D.C. Cir. 2011) (quoting *Pickering,* 391 U.S. at 568). Acting as an employer rather than as the sovereign, the government has "far broader powers" in restricting speech otherwise protected by the First Amendment. *Waters v. Churchill*, 511 U.S. 661, 671 (1994).

To establish a First Amendment violation, a public employee must meet several elements under *Pickering*. First, the public employee must have spoken as a private citizen, addressing

---

5    Even though step three of the *Pickering* test discussed below relates to whether speech was a substantial or motivating factor in prompting the challenged personnel action and is usually a question for a finder of fact, here, Plaintiff has failed to even plausibly allege that her speech could be such a motivating factor.

matters of public concern. *See Garcetti v. Ceballos,* 547 U.S. 410, 422 (2006); *Orange v. D.C.,* 59 F.3d 1267, 1272 (D.C. Cir. 1995); *Baumann*, 795 F.3d at 215.  Second, if the "private citizen/public concern" requirement is met, then the court "must 'arrive at a balance between the interests of the employee, [as] a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees.'" *United States v. Nat'l Treasury Emps. Union ("NTEU")*, 513 U.S. 454, 465–66 (1995) (original alteration omitted) (quoting *Pickering*, 391 U.S. at 568).  Third, the employee must show that his or her speech was a substantial or motivating factor in prompting the challenged personnel action.  *Wilburn v. Robinson,* 480 F.3d 1140, 1149 (D.C. Cir. 2007) (quotation marks, citations, and alterations omitted).  Finally, the employee must refute any showing by the government employer that it would have reached the same decision in the absence of the protected speech.  *Id.*  The first two of these four questions are questions of law for the court to resolve.  *Navab-Safavi*, 637 F.3d at 316.

*Pickering*'s second step requires the Court to balance competing interests: it must weigh the plaintiff's interest "as a citizen, in commenting upon matters of public concern[,]" against the government's interest "as an employer, in promoting the efficiency of the public services it performs through its employees."  *Pickering,* 391 U.S. at 568; *LeFande v. District of Columbia*, 841 F.3d 485, 494 (D.C. Cir. 2016).  This balancing may entail several factors: among them, "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."  *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).  Moreover, a government employer can act before an employee's speech actually disrupts the functioning of an

- 11 -

office.  *Connick v. Myers*, 461 U.S. 138, 152 (1983) ("[W]e do not see the necessity . . . for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.").

An analogous balancing test, known as the *Elrod–Branti*[6] test, developed in a line of freedom of belief and association cases that permit dismissals for certain policy-level employees (sometimes described as "policymakers," "key deputies," and "confidential employees"),[7] also applies in *Pickering* cases.  *Hall v. Ford*, 856 F.2d 255, 261-63 (D.C. Cir. 1988).[8]  As the court explained, the general rule is that "the government cannot condition employment on the compromise or relinquishment of a constitutional right, be it freedom of belief and association," (*Elrod–Branti*) "or freedom of speech (*Pickering*)."  *Hall*, 856 F.2d at 262-63.  But this general rule is not without limit, because the government has a legitimate interest in efficient operations that sometimes carries greater weight than an individual employee's exercise of his or her constitutional freedoms.  *Id.*

Thus, courts applying *Elrod–Branti* afford government employers even greater latitude in dismissing certain policy-level employees, reflecting the importance of allowing officials at the top of the organizational hierarchy to implement their policies through politically compatible deputies.  *Hall*, 856 F.2d at 263.  Such employment decisions are broadly permissible because "[i]n order for the new administration to be given an opportunity to fulfill expectations, it must

---

[6]     The name for this test comes from two seminal cases involving political affiliation dismissals: *Elrod v. Burns*, 427 U.S. 347 (1976), and *Branti v. Finkel*, 445 U.S. 507, 517 (1980).

[7]     "Policy-level employees" includes not just "policymakers," but also those who "implement" policy, including "key deputies" and "confidential" employees who serve at the behest of the policymaking official.  *Hall*, 856 F.2d at 262-265

[8]     The Court can draw reasonable inferences about potential harm to the government-as-employer stemming from employee speech.  *Hall*, 856 F.2d at 261.

have available and also appear to have available significant facilitators of policy, people who have the personal and partisan loyalty, initiative, and enthusiasm that can make the difference between the acclaimed success of a government agency or program and its failure or, more typically, its lackluster performance." *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241 (1st Cir. 1986) (en banc); *see also Elrod*, 427 U.S. at 367; *Grossart v. Dinaso*, 758 F.2d 1221, 1226 (7th Cir. 1985) ("Elected officials must be able to rely on the political loyalty of a policymaking civil servant in order to seize the reigns [sic] of government and realize their electoral mandate.").

Tailored for *Pickering* speech cases, the test for identifying a qualifying government interest in political affiliation is as follows. The Court first asks "whether the employee's position relates to an area as to which there is room for principled disagreement on goals or their implementation." *Hall*, 856 F.2d at 264. In other words, the Court asks whether the position is in a policy area and, if so, "whether the office gives the employee broad responsibilities with respect to policy formulation, implementation, or enunciation," *i.e.*, whether the individual is a policy-level employee. *Id.* If both criteria are met, the Court asks then "whether the government interest in accomplishing its organizational objectives through compatible policy level deputies is implicated by the employee's speech" on policy areas for which the employee is responsible. *Id.*

> 2.    Even If Plaintiff Plausibly Alleged A Connection Between Her Speech And Termination (Which She Has Not), She Has Not Stated A First Amendment Claim

Even if Plaintiff had plausibly alleged a connection between her speech and termination (which she has not), she has not stated a First Amendment claim because the Complaint fails to state a claim under the *Pickering* balancing test as it applies to policy-level employees.[9]

---

[9]    Plaintiff alleges that she engaged in protected speech prior to her appointment as an immigration judge by affiliating with the Democrat party and running for elected office under the Democrat banner. Compl. (ECF No. 1) ¶ 29. As such, even though Plaintiff has not identified specific speech that she believes motivated the Defendants to dismiss her, Defendants

Under the modified *Pickering* balancing test, *see supra*, Part III(A)(2), a policy-level employee speaks without First Amendment protection when the "the government interest in accomplishing its organizational objectives through compatible policy level deputies is implicated by the employee's speech." *Hall*, 856 F.2d at 264. Put differently, a policy-level employee speaks without First Amendment protection when his speech implicates a "policy disagreement with his superiors such that they c[an]not expect [the employee] to carry out their policy choices vigorously." *Id.* at 265. This is true even for employees, who, although not policymakers themselves, are responsible for "implement[ing]" or "carry[ing] out" the policy objectives of their policymaking superiors, and thus, still qualify as policy-level employees. *Id.* at 264-65.

As applied in *Hall*, the D.C. Circuit found that the athletic director of a public university could be dismissed for making public statements about his perception that the school's athletic department was violating rules established by the National Collegiate Athletic Association ("NCAA") and the school itself. *Id.* The court reasoned that, as the athletic director, the plaintiff's position related to a policy area, and his duties, which included "implementation of the University's broad goals" as set forth by the President and the Board, made him a policy-level official. *Id.* at 265 (*quoting Elrod*, 427 U.S. at 368). In so holding, the court noted that the statutory provisions governing the director's excepted service employment defined him as a "confidential" or "policymaking" employee, and that he reported directly to the President and the Board, thus providing additional evidence of the director's status as a policy-level employee. *Id.* at 264-65. As a result, the university "had a significant interest in ensuring that [plaintiff] was, and was perceived to be, compatible with the President and the Board [and plaintiff's] speech directly

---

acknowledge the Court may assume for the sake of argument that Plaintiff can satisfy the first step of the *Pickering* test.

interfered with this interest, as he engaged in a pattern of opposition to the policies of his superiors." *Id.*

More recently, a court in this district found that the District of Columbia's interest in ensuring a harmonious workplace and the credibility of the office outweighed any countervailing interests in order to justify dismissal of an Administrative Law Judge who gave public testimony and made private remarks to the city council criticizing the office for which he worked. *Pearson v. D.C.*, 644 F. Supp. 2d 23, 44 (D.D.C. 2009), *aff'd*, 377 F. App'x 34 (D.C. Cir. 2010). The plaintiff in *Pearson* had been serving an initial two-year term as an administrative law judge and challenged the selection commission's decision not to reappoint him to a ten-year term. *Id.* at 29-30. Following disputes with his supervisors regarding certain agency policies, Pearson made statements to the mayor and city council regarding his criticism. *Id.* at 30-31. The court dismissed Pearson's First Amendment claim, finding that he had not engaged in protected speech and that the government's interests justified its decision not to reappoint him. *Id.* at 37, 42.

Here, Plaintiff does not include specific allegations regarding the nature of any political speech in which she might have engaged. She makes no reference to any specific political comments uttered to others, either prior to her appointment or during her tenure with EOIR. Rather, Plaintiff makes conclusory, broad assertions that she "was terminated because of her political activity and her partisan affiliation" and that a "Google search for her name easily reveals she is affiliated with the Democratic Party." *Id.* ¶82.[10] As a former immigration judge, she was charged with making decisions regarding immigration law, which clearly falls within the high-level policy group for which there are stronger governmental interests in regulating speech. *See*

---

[10]    Tellingly, however, she has not alleged that either the Acting Director or the Acting Attorney General made such a search.

*Hall*, 856 F.2d at 263 ("High-level officials must be permitted to accomplish their organizational objective through key deputies who are loyal, cooperative, willing to carry out their superiors' policies, and perceived by the public as sharing their superiors' aims."). Since immigration judges are inferior officers under Article II of the Constitution[11] and act as delegates of the Attorney General[12] in which they exercise administrative authority over immigration law,[13] they fall within the high-level policy group that necessitates stronger governmental interest in regulating speech. Plaintiff, as an immigration judge, would have exercised significant policymaking and administrative authority, through her authority to issue immigration decisions and delegated authority, by the Attorney General, to implement the Immigration and Nationality Act. By regulation, she exercised "independent judgment and discretion and may take any action consistent with [their] authorities under the Act and regulations that is necessary or appropriate for the disposition or alternative resolution of" cases before them—including conducting hearings and

---

[11]   Officers are individuals who both occupy a continuing and permanent position established by law and "exercise[] significant authority pursuant to the laws of the United States." *Lucia v. SEC*, 585 U.S. 237, 245 (2018). Inferior officers are those directed by a principal officer, *i.e.*, "'directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate.'" *United States v. Arthrex, Inc.*, 594 U.S. 1, 13 (2021) (quoting *Edmond v. United States*, 520 U.S. 651, 663 (1997)); *see Duenas v. Garland*, 78 F.4th 1069, 1072-74 (9th Cir. 2023) (finding "Immigration Judges and BIA members are inferior officers").

[12]   *See* 8 C.F.R. § 1003.10(a) ("Immigration Judges shall act as the Attorney General's delegates in the cases that come before them.").

[13]   As an immigration judge, Plaintiff conducted proceedings "for deciding the inadmissibility or deportability of an alien," 8 U.S.C. § 1229a(a)(1), and in carrying out these proceedings, she must "administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses," 8 U.S.C. § 1229a(b)(1). Immigration judges may also issue subpoenas for the attendance of witnesses and presentation of evidence and can sanction by civil money penalty any action in contempt of their proper exercise of authority under the law. *Id.* And at the conclusion of proceedings, they issue decisions as to whether an alien is removable from the U.S. 8 U.S.C. § 1229a(c)(1)(A).

exercising the adjudicative authorities described above. 8 C.F.R. § 1003.10(b). Thus, assuming, arguendo, that Defendants were even aware of Plaintiff's political career, Defendants would have been justified in removing Plaintiff for speech which ran contrary to their policy goals, even if that was because of positions she championed as part of her prior campaign under the banner of the Democrat party.

**III.    Plaintiff's Termination Was a Proper Exercise of Article II Authority**

Even if Plaintiff had made out a *prima facie* case under Title VII or had stated a First Amendment claim (which she has not), her status as an Officer of the United States as an Immigration Judge means that neither the protections of Title VII or the First Amendment apply to her removal here under Article II of the Constitution.  Because Plaintiff is an inferior officer exercising significant executive power and discretion, she could be removed without cause.

Article II of the Constitution vests the President with "[t]he executive Power" and directs him to ensure the law is faithfully executed. *Seila Law L.L.C. v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020). The President, of course, must rely on others to assist him in executing the laws. *See id*. at 204 ("[T]he Framers expected that the President would rely on subordinate officers for assistance."); *Printz v. United States*, 521 U.S. 898, 922 (1997) (explaining that the President fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints" (internal citations and quotation marks omitted)); *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 666-67 & n.51 (D.D.C. 2018), *aff'd*, 916 F.3d 1047 (D.C. Cir. 2019) (collecting cases). To ensure that those officers faithfully execute the laws, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acctg. Oversight Bd*., 561 U.S. 477, 513-14 (2010). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id*. at 514.

- 17 -

While "all of" the "executive Power" is vested in the President, *Seila Law*, 591 U.S. at 203, the heads of departments—and inferior officers below them—may also properly exercise that power on his behalf. *See* U.S. Const., art. II, § 2, cl. 2 (providing that the heads of departments may appoint inferior officers). As those officials exercise executive power, their acts are attributable to the President. *See, e.g., Printz,* 521 U.S. at 922 (the President fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints"); *Wilbur v. U.S. ex rel. Barton*, 46 F.2d 217, 219 (D.C. Cir. 1930) ("It is settled law that the [P]resident speaks and acts through the heads of the several departments in relation to subjects which appertain to their respective duties and that the acts of the heads of departments, within the scope of their powers, are in law the acts of the President." (internal quotations to *Wilcox v. Jackson*, 38 U.S. (13 Pet.) 498, 513 (1839), and *Wolsey v. Chapman*, 101 U.S. 755, 769 (1879), omitted)).

"[T]he power of removal of executive officers [is] incident to the power of appointment." *Myers v. United States*, 272 U.S. 52, 119 (1926); *see Kennedy v. Braidwood Management*, 606 U.S. 748, 763 (2025) (citing the same). Here, Plaintiff was appointed by the head of a department: the Attorney General, the head of the Department of Justice. 28 U.S.C. § 503. As 8 U.S.C. § 1101(b)(4) makes clear, an "Immigration Judge" is "an attorney whom the Attorney General appoints as an administrative judge within the Executive Office for Immigration Review." Plaintiff was also supervised by the Attorney General. *See* 8 U.S.C. § 1101(b)(4) ("An [I]mmigration [J]udge shall be subject to such supervision and shall perform such duties as the Attorney General shall prescribe."). And she was vested with executing the laws of the United States. 8 U.S.C. § 1229a (vesting Immigration Judges with power to "conduct proceedings for deciding the inadmissibility or deportability of an alien"); 8 C.F.R. § 1003.10(a) ("Immigration judges shall act as the Attorney General's delegates in the cases that come before them). Because

- 18 -

Plaintiff was appointed to her former position as an Immigration Judge by the Attorney General and supervised by the Attorney General in the exercise of executive power, she was presumptively removable from that position without cause under Article II. *Seila Law*, 591 U.S. at 228 ("[T]he President's removal power is the rule, not the exception.").

The Supreme Court has recognized only two exceptions to the general rule that an executive branch officer must be removable at will. *Seila Law*, 591 U.S. at 215-20. First, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court held that Congress could "give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Second, the Court has held that Congress could provide tenure protections to "inferior officers with limited duties and no policymaking or administrative authority." *Id.* at 218. Immigration Judges do not fit within either of those exceptions, as the Merit Systems Protection Board ("MSPB") recently held. *Jackler & Jaroch Consolidation, v. Dep't of Just., et al.*, No. CF-0752-26-0069-I-1, 2026 WL 789485 (M.S.P.B. Mar. 20, 2026).

First, Immigration Judges do not resemble commissioners of a multimember body of experts, balanced along partisan lines, exercising quasi-legislative and quasi-judicial power, as the Supreme Court found was at issue in *Humphrey's Executor*. *Id.* at 216. Immigration Judges do not act as a "legislative agency" or "an agency of the judiciary" by "making recommendations" to those bodies. *Id.* at 215-16. Instead, they exercise executive power as inferior officers *within* the Department of Justice, a purely executive agency, but not one which operates as a free-standing body. *See, e.g., Wiener v. United States*, 357 U.S. 349, 356(1958) (holding that the principles of *Humphrey's Executor* applied to the War Claims Commission, which Congress had established to maintain some independence from the chief executive). Immigration Judges are tasked with

- 19 -

"conduct[ing] proceedings for deciding the inadmissibility or deportability of an alien," and those proceedings are "the sole and exclusive procedure for determining whether an alien may be admitted to the United States or … removed from the United States."  8 U.S.C. § 1229a(a)(1), (3). To fulfill that responsibility, Immigration Judges "administer oaths, receive evidence, and interrogate, examine, and cross-examine" witnesses; "issue subpoenas;" and may "sanction … any action (or inaction) in contempt of the judge's proper exercise of authority." *Id.* § 1229a(b)(1). Immigration Judges may also issue subpoenas for the attendance of witnesses and presentation of evidence and can sanction by civil money penalty any action in contempt of their proper exercise of authority under the law. *Id*. At the conclusion of the proceeding, the Immigration Judge decides "whether an alien is removable from the United States." *Id.* § 1229a(c)(1)(A).  As officers of EOIR, such activities are plainly executive, rather than legislative or judicial—and "indeed, under our constitutional structure they *must be* exercises of [] the 'executive Power.'" *Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013) (explaining that even an agency's determinations regarding its own jurisdiction is necessarily an exercise of executive, not judicial or legislative, authority).  Thus, in conducting adversarial inquiries, Immigration Judges have duties and powers equivalent to those of SEC administrative law judges and U.S. Tax Court special trial judges and, therefore, qualify as "inferior officers."  *Jackler*, 2026 WL 789485, at *8.

Second, an Immigration Judge's broad duties also exceed the bounds of the exception for inferior officers who have "limited duties and no policymaking or administrative authority." *Seila Law*, 591 at 218.  In *Morrison v. Olson*, 487 U.S. 654 (1988), for instance, the Supreme Court concluded that removal protection for an independent counsel who had been appointed by a court of law was constitutional because the independent counsel had "limited jurisdiction" and "lack[ed] policymaking or significant administrative authority."  *Id.* at 691.  While independent counsels'

- 20 -

jurisdiction under the (now-expired) statute at issue in *Morrison* was limited to investigating and prosecuting specific matters referred by the Attorney General, *id.* at 660-63, Immigration Judges have broad authority to "conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). And far from "lacking policymaking or significant administrative authority," *Morrison*, 487 U.S. at 691, Immigration Judges "shall exercise their independent judgment and discretion" in conducting hearings to decide inadmissibility or deportability. 8 C.F.R. § 1003.10. And in doing so, they make decisions that are subject to only limited appellate review in an area that implicates core executive power—the federal government's authority to enforce the immigration laws. *See, e.g.*, *Patel v. Garland*, 596 U.S. 328, 337-40 (2022) (discussing 8 U.S.C. § 1252(a)(2)); *Arizona v United States*, 567 U.S. 387, 395-97 (2012); 8 C.F.R. § 1003.1(b) (setting forth limited circumstances in which the Board of Immigration Appeals ("BIA") may review decisions of Immigration Judges).[14] Immigration judges wield vast administrative authority in an area of significant consequence, and the decisions entrusted to their discretion can "involve policy choices that bear on this Nation's international relations." *Arizona*, 567 U.S. at 396. The authority provided to them thus placed them in a position that had the potential to dramatically impact the rights of those inside our borders, as well as the nation's

---

[14] For example, negative decisions of Immigration Judges in "credible fear review" proceedings are not subject to further review and result in the "expedited removal' of the alien. *See* 8 C.F.R. § 1208.30(g)(2)(iv). Likewise, no direct appeal lies from an Immigration Judge's decision to order an alien's removal from the United States in absentia. *See Matter of Guzman-Arguera*, 22 I&N Dec. 722, 722 (BIA 1999). Even if review is available, if an alien does not appeal an Immigration Judge's removal decision, the Immigration Judge's decision becomes a final administrative order of removal. *See* 8 C.F.R. § 1241.1. Moreover, Immigration Judges also have the authority to grant aliens a wide range of immigration benefits, including asylum, which can place them on a path towards United States citizenship and render them eligible for numerous public benefits at great expense to the American taxpayer. *See* 8 C.F.R. § 1208.2(b). By wielding significant immigration authority, often unencumbered by further review, Immigration Judges effectively determine the policy and enforce the laws of the United States as delegates of the Attorney General.

standing in the world. Their positions are not comparable to the independent prosecutor in *Morrison*, who exercised limited jurisdiction and had no ability to affect policy. *Jackler*, 2026 WL 789485, at *8.

The significant responsibilities of Immigration Judges demonstrate that they are not "part of the broad swath of lesser functionaries in the Government's workforce"; they are officers of the United States who exercise part of the President's executive power. *See Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 245 (2018) (finding that administrative law judges at the Securities and Exchange Commission were inferior officer subject to the Appointments Clause). In fact, "any appointee" to a continuing position "exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States'" within the meaning of Article II. *Buckley v. Valeo*, 424 U.S. 1, 126 (1976). The Securities and Exchange Commission's administrative law judges meet that standard; they exercise "significant discretion" in conducting "fair and orderly adversarial hearings" and issue decisions with legal effect. *Lucia v. SEC*, 585 U.S. 237, 248 (2018). As the Ninth Circuit squarely held, Immigration Judges do too. Immigration Judges' responsibilities are legally defined and continuous and involve substantial authority to conduct adversarial hearings in removal proceedings. *Duenas v. Garland*, 78 F.4th 1069, 1073 (9th Cir. 2023) (citing 8 U.S.C. § 1229a). As such, any restriction on the removal of an Immigration Judge from office would impermissibly encroach on the President's otherwise "unrestricted removal power" with respect to "inferior officers." *Seila Law LLC*, 591 U.S. at 204; *see also Exela Enter. Sols., Inc. v. Nat'l Lab. Rels. Bd.*, 32 F.4th 436, 445 (5th Cir. 2022) ("The President's power to remove is essential to the performance of his Article II responsibilities and control over the Executive Branch."). To hold otherwise would unduly restrict the "executive power" which is "vested in a President," who must "take care that the laws be faithfully executed." U.S. Const.,

Art. II, § 1, cl. 1; § 3.   Therefore, the Attorney General's decision to terminate Plaintiff's appointment as an Immigration Judge—a position in which Plaintiff exercised significant executive power—was a proper exercise of Article II authority.

Plaintiff's attempts to present her case as violating Title VII or the First Amendment does not change the analysis.  Unlike with administrative law judges, Congress has provided no explicit removal protections for immigration judges in their trial period. *Compare* 5 U.S.C. § 7521(a) (requiring "good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board" for adverse employment actions against administrative law judges) *with* 8 U.S.C. § 1101(b)(4) (merely stating that immigration judges are "attorneys whom the Attorney General appoints," with no mention of tenure, term limits, or removal conditions).[15]   The absence of such explicit protection is dispositive given that the Supreme Court and the D.C. Circuit have explained that "to 'take away' the power of at-will removal from an appointing officer, Congress must use 'very clear and explicit language.'" *Braidwood*, 606 U.S. at 771 (quoting *Shurtleff v. United States*, 189 U.S. 311, 315 (1903)); *see Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023) ("Congress must make it clear in a statute if it wishes to restrict the President's removal power.").  As such, neither the statutory provisions governing the appointment of immigration judges nor Title VII nor the First Amendment should be read to limit the Article II removal power that can be exercised by the head of a Department. *See Braidwood*, 606 U.S. at 772 ("Congress must speak clearly if it wishes to insulate officers from at-will removal."); *Severino*, 71 F.4th at 1044 (demanding a "clear signal" that Congress

---

[15]   Because she was still in her trial period, Plaintiff cannot point broadly to any Chapter 75 protections that might apply to excepted service employee who has passed his or her two-year trial period.  *See, e.g. Levinsky v. Dep. Of Justice*, 99 M.S.P.R 574 (2005) (applying Chapter 75 procedures to a tenured immigration judges).

intends to displace the appointing official's Article II removal authority); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").  This is especially true here because Plaintiff, in her former position, exercised significant policymaking discretion over immigration, a matter traditionally reserved for the Executive Branch.  *See Dep't of State v. Munoz*, 602 U.S. 899, 907 (2024) ("For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.") (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)); *Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention.").

## IV.    Plaintiff's Declaratory Judgment Claim Should Be Dismissed

In Count Four of her Complaint, Plaintiff requests "declaratory relief" and "a declaration of rights" "on the basis of all claims identified."  Compl. (ECF No. 1) ¶¶ 85-86.  Plaintiff is not entitled to relief under the Declaratory Judgment Act and Count Four should be dismissed.  It is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction and that the availability of declaratory relief presupposes the existence of a judicially remediable right.  *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011); *see also* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505  or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority,

any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.").  Where, as here, Plaintiff has not stated a claim for relief under another provision of law, she may not pursue remedies independently under the Declaratory Judgment Act. *See Maynard v. Architect of the Capitol,* 544 F. Supp. 3d 64, 77 (D.D.C. 2021) (dismissing claim under Declaratory Judgment Act where plaintiff had not established waiver of sovereign immunity for any other claim).

## V.      Plaintiff Is Not Entitled To Mandamus Relief

Finally, in Count Five of the Complaint, Plaintiff seeks "a writ of mandamus or relief in the nature of mandamus commanding Defendants to return her to her office."  Compl. (ECF No. 1) ¶ 87.  Though Plaintiff does not cite the source of any entitlement to mandamus, she would not be entitled to such extraordinary relief under the Mandamus Act, 28 U.S.C. §1361.

In 28 U.S.C. § 1361, Congress granted federal district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." An "agency" is defined as "any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest." *Id.* § 451. Mandamus may only issue when "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983). "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

- 25 -

"It is not disputed that the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). As the D.C. Circuit has explained, its "consideration of any and all mandamus actions starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000). "[E]ven if the plaintiff overcomes all the[ ] hurdles" to show he is entitled to relief, "whether mandamus relief should issue is discretionary." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc).

Plaintiff is not entitled to the extraordinary relief of mandamus because she has not plausibly alleged that she has a clear right to reinstatement or that Defendants have a clear duty to reinstate her. *See generally*, Compl. (ECF No. 1).  In support of Count Five, the Complaint alleges that "Title VII and the First Amendment impose a ministerial duty on all Defendants not to discriminate on the basis of sex, national origin, political activity or partisan affiliation." *Id.* ¶ 88. Though Defendants do not concede that the requirements of Title VII and the First Amendment "impose a ministerial duty," even assuming *arguendo* that they did, this conclusory assertion does not suffice to plausibly allege that Plaintiff has a right to be reinstated or that Defendants have a clear duty to reinstate her.  On the contrary, as discussed, Plaintiff was an inferior officer appointed by the head of an executive department and vested with executing the laws of the United States, and is removable at-will under Article II of the Constitution. *Supra*, § III.  Moreover, Plaintiff has not (and cannot) identify any right to reinstatement or a duty to reinstate in the text of Title VII or the First Amendment.

Finally, while mandamus is a proper mechanism for trying the title to judicial offices, *see Marbury v. Madison*, 1 Cranch 137, 167-173 (1803) (justice of the peace); *Hennen, Ex parte,* 13

- 26 -

Pet. 230, 256  (1839) (court clerk), courts may not use it to restore executive officers. Mandamus must comport with separation-of-powers principles.  *See Cheney v. U.S. District Court*, 542 U.S. 367, 381 (2004). Mandamus directed to the President would also violate the bedrock principle that a court may not restrain the President "in the performance of his official duties." *Mississippi v. Johnson*, 4 Wall. 475, 501 (1867). Before 2025, no federal court appears to have ever issued mandamus to prevent the President's removal of an executive officer. *See Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *6 (D.C. Cir. Apr. 7, 2025) (Rao, J., dissenting).  Further, while parties can obtain preliminary injunctions upon showing a likelihood of success and can obtain declaratory judgments upon prevailing on the merits, anyone seeking mandamus must establish a "clear and indisputable" right to relief. *United States* v. *Duell*, 172 U.S. 576, 582 (1899). Plaintiff cannot satisfy that standard here.

The Complaint does not plausibly allege that she is entitled to the extraordinary relief of mandamus and Count Five should therefore be dismissed.

\* \* \*

- 27 -

## CONCLUSION

For these reasons, Plaintiff's Complaint should be dismissed.

Dated:  April 6, 2026                           Respectfully submitted,

                                                JEANINE FERRIS PIRRO
                                                United States Attorney


                                        By:  _____/s/ Sian Jones_____
                                                SIAN JONES, D.C. Bar #1024062
                                                Assistant United States Attorney
                                                601 D Street, NW
                                                Washington, D.C., 20530
                                                (202) 252-2578

                                                *Attorneys for the United States of America*

- 28 -