UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TANIA NEMER,<br><br>        Plaintiff,<br><br>        v.<br><br>TODD BLANCHE, Acting Attorney<br>General, et al.,<br><br>        Defendants. | Civil Action No. 25-4170 (SLS) |

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

Table of Contents..................................................................................................................i

Table Of Authorities ............................................................................................................ii

Argument ............................................................................................................................. 1

     I.     Plaintiff Has Not Stated a Title VII Claim.................................................. 1

     II.    Plaintiff Has Not Stated a First Amendment Claim.................................... 6

     III.   Plaintiff's Termination Was a Proper Exercise of Article II Authority................ 11

     IV.   Plaintiff's Declaratory Judgment Claim Should Be Dismissed............................ 16

     V.    Plaintiff Is Not Entitled To Mandamus Relief........................................................ 17

Conclusion ........................................................................................................................ 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ali v. Rumsfeld*,
    649 F.3d 762 (D.C. Cir. 2011) ............................................................................. 16

*Am. Hosp. Ass'n v. Burwell*,
    812 F.3d 183 (D.C. Cir. 2016) ............................................................................. 17

*Arizona v. United States*,
    567 U.S. 387 (2012) ........................................................................................... 9, 13

*Banneker Ventures, LLC v. Graham*,
    798 F.3d 1119 (D.C. Cir. 2015) ............................................................................. 2

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................... 7

*Blind of Del. Cnty. Valley, Inc. v. Regan*,
    709 F.2d 1521 (D.C. Cir. 1983) ........................................................................... 17

*Branti v. Finkel*,
    445 U.S. 507 (1980) ............................................................................................... 6

*Elrod v. Burns*,
    427 U.S. 347 (1976) ............................................................................................... 6

*Endermuhle v. Dep't of Treasury*,
    No. SE-0752-00-0338-I-1, 89 M.S.P.R. 495, 2001 WL 1089544 (M.S.P.B. Aug. 31, 2001) .... 5

*Figeroa v. Pompeo*,
    923 F.3d 1078 (D.C. Cir. 2019) ............................................................................. 3

*George v. Leavitt*,
    407 F.3d 405 (D.C. Cir. 2005) ............................................................................... 6

*Grand Lodge of Fraternal Ord. of Police v. Ashcroft*,
    185 F. Supp. 2d 9 (D.D.C. 2001) ......................................................................... 17

*Hall v. Ford*,
    856 F.2d 255 (D.C. Cir. 1988) ...................................................................... 6, 8, 9

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*,
    284 F. Supp. 2d 15 (D.D.C. 2003) ....................................................................... 17

*Horne v. MSPB*,
    684 F.2d 155 (D.C. Cir. 1982) ......................................................................... 9, 10

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) ............................................................................................. 12

*Jackler & Jaroch Consolidation, v. Dep't of Just., et al.*,
    No. CF-0752-26-0069-I-1, 2026 WL 789485 (M.S.P.B. Mar. 20, 2026) .................. 9, 13, 16

*Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004) ............................................................................... 2

*Keith v. U.S. Gov't Accountability Off.*,
    Civ. A. No. 21-2010, 2022 WL 3715776 (D.D.C. Aug. 29, 2022) ........................... 1

*Kennedy v. Braidwood Management*,
    606 U.S. 748 (2025) ............................................................................................. 11

*Law v. Dep't of the Navy,*
  No. SE-3443-97-0399-I-1, 77 M.S.P.R. 474, 1998 WL 39272 (M.S.P.B. Jan. 27, 1998) ......... 5
*Lucia v. Sec. & Exch. Comm'n,*
  585 U.S. 237(2018) .............................................................................................................. 14
*Marin Audubon Soc'y v. Fed. Aviation Admin.,*
  121 F.4th 902 (D.C. Cir. 2024) ........................................................................................... 12
*Maynard v. Architect of the Capitol,*
  544 F. Supp. 3d 64 (D.D.C. 2021) ...................................................................................... 16
*McDonnell Douglas Corp. v. Green,*
  411 U.S. 792 (1973) .............................................................................................................. 2
*Morrison v. Olson,*
  487 U.S. 654 (1988) ........................................................................................... 10, 11, 12, 13
*Myers v. United States,*
  272 U.S. 52 (1926) ......................................................................................................... 10, 12
*Nurriddin v. Bolden,*
  818 F.3d 751 (D.C. Cir. 2016) .............................................................................................. 1
*Pearson v. D.C.,*
  644 F. Supp. 2d 23 (D.D.C. 2009) ..................................................................................... 8, 9
*Pickering v. Bd. of Ed.,*
  391 U.S. 563 (1968) .............................................................................................................. 6
*Seila Law L.L.C. v. Consumer Fin. Prot. Bureau,*
  591 U.S. 197 (2020) ........................................................................................... 10, 11, 12, 13
*SS&T, LLC v. Am. Univ.,*
  Civ. A. No. 19-0721 (JDB), 2020 WL 1170288 (D.D.C. Mar. 11, 2020) ............................. 1
*United States v. Arthrex, Inc.,*
  594 U.S. 1 (2021) ........................................................................................................... 15, 17
*United States v. Dorcely,*
  454 F.3d 366 (D.C. Cir. 2006) ........................................................................................... 12
*United States v. Perkins,*
  116 U.S. 483 (1886) ............................................................................................................ 13
*Wannall v. Honeywell, Inc.,*
  775 F.3d 425 (D.C. Cir. 2014) ........................................................................................... 17
*Winslow v. FERC,*
  587 F.3d 1133 (D.C. Cir. 2009) ......................................................................................... 12

**Statutes**

5 U.S.C. chapter 75 ................................................................................................................... 5
5 U.S.C. § 7511 ....................................................................................................................... 16
5 U.S.C. § 7511(a)(1)(C) ........................................................................................................... 4
8 U.S.C. § 1229a ..................................................................................................................... 13
8 U.S.C. § 1229a(a)(1) ............................................................................................................ 13
28 U.S.C. §1361 ...................................................................................................................... 17
28 U.S.C. § 2201(a) ................................................................................................................ 16
U.S.C. § 1229a(a)(1) ............................................................................................................... 13

## Regulations

5 C.F.R. § 11.3(a)...................................................................................................................... 4
5 C.F.R. § 752.401(b)(11)........................................................................................................... 5
5 C.F.R. §§ 11.5(a)...................................................................................................................... 5
8 C.F.R. § 1003.10...................................................................................................................... 8
8 C.F.R. § 1003.10(b) .......................................................................................................... 13, 14
8 C.F.R. § 1003.1(b) ................................................................................................................. 16
8 C.F.R. § 1003.1(d)(7).............................................................................................................. 14
8 C.F.R. § 1003.1(h)(1).............................................................................................................. 14
8 C.F.R. § 1241.1 ...................................................................................................................... 15
8 C.F.R. §§ 1003.1(h)(1)(i)........................................................................................................ 15

Defendants, the Acting Attorney General and the Department of Justice ("Department"), respectfully submit the following reply in further support of their motion to dismiss the complaint filed by Plaintiff, Tania Nemer (ECF No. 15). As explained in Defendants' Motion, the Complaint does not plausibly allege that Plaintiff is entitled to relief under Title VII of the Civil Rights Act of 1964 ("Title VII") or the First Amendment of the U.S. Constitution. And regardless, Plaintiff concedes that as an immigration judge, Plaintiff was an inferior officer. She was thus removable at will by the Attorney General under Article II of the Constitution unless her position met one of two narrow exceptions. Immigration judges meet neither, as the Merit Systems Protection Board ("MSPB") recently concluded. Plaintiff's Opposition seeks to expand those exceptions beyond those which have been articulated in Supreme Court precedent. The Complaint should be dismissed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim.

## ARGUMENT

### I.    Plaintiff Has Not Stated a Title VII Claim

As demonstrated by Defendants' Motion, Plaintiff has failed to plausibly allege that she was terminated either because of her sex (female) or national origin (Lebanese) and has, therefore, failed to state a claim under Title VII. Defs' Mot. (ECF No. 15) at 13-15 (citing *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016); *SS&T, LLC v. Am. Univ.*, Civ. A. No. 19-0721 (JDB), 2020 WL 1170288, at *4 (D.D.C. Mar. 11, 2020); *Keith v. U.S. Gov't Accountability Off.*, Civ. A. No. 21-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022)). As explained by Defendants' Motion, the Complaint hangs her sex and national origin claims (Counts One and Two) entirely on conclusory allegations that Plaintiff's male and non-Lebanese colleagues in their trial periods were not terminated and were comparators—and this is not enough to satisfy the causation prong of Plaintiff's Title VII pleading burden. Defs' Mot. (ECF No. 15) at 13-15. In response, Plaintiff attempts to bolster her allegations regarding comparators, makes light of the issues with her driving

record and tax history cited by the Executive Office for Immigration Review ("EOIR" or "Agency") in connection with her termination and attempts to characterize the process through which she was terminated as deviating from established agency policy. Pl's Opp'n (ECF No. 18) at 15-24. Plaintiff is incorrect.

First, Plaintiff's Opposition argues that Defendants inaccurately state that she did not allege that the two male Immigration Judges in Cleveland were also in their trial periods. Pl's Opp'n (ECF No. 18) at 23 (citing Compl. (ECF No. 1) ¶¶ 33, 68, 75). Defendants do not dispute that the Complaint contains allegations that the other Immigration Judges in Cleveland were also in their trial periods at the time of Plaintiff's termination (which Defendants overlooked when they submitted their opening brief). However, Plaintiff was the only Immigration Judge hired in Cleveland in August 2023. Notice: EOIR Announces 38 New Immigration Judges (Aug. 11, 2023), *available at* https://www.justice.gov/eoir/page/file/1592866/dl?inline (last visited June 5, 2026).[1] This fact further demonstrates the conclusory nature of her assertion that her male colleagues in Cleveland were comparators simply because they had not reached the ends of their two-year trial periods.

Second, much of Plaintiff's Opposition focuses on steps two and three of the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). *See* Pl's Opp'n (ECF No. 18) at 15-24 (discussing the Agency's justification for terminating her and

---

[1]    The Court can consider press releases regarding events that are the subject of allegations in the Complaint without converting Defendants' Motion into a motion for summary judgment. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment."); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (a court may consider "public records subject to judicial notice on a motion to dismiss").

allegations she believes demonstrate pretext).[2]  Defendant did not argue that the Complaint failed for want of alleging pretext.  Rather, Defendant argued that the Complaint's conclusory causation allegations doomed her Title VII claims before shifting to the latter part of the *McDonnell Douglas* analysis.  Defs' Mot. (ECF No. 15) at 13-15.  Thus, Plaintiff's arguments regarding the justification the Agency provided for her termination in the initial letter and during the administrative phase, and regarding her allegations of pretext do not actually address her pleading defects.

Third, Plaintiff attempts to frame her critique of the Agency's justification for her termination at the administrative phase as allegations of circumstantial facts that she contends bolster the plausible inferences one might draw from her assertion that no other judges in her protected classes were terminated.  Pl's Opp'n (ECF No. 18) at 19-21.  But these arguments also rely on a skewed and implausible presentation of the factual allegations in the Complaint. Plaintiff's Opposition attempts to transform the allegation that Hunsucker—who was Plaintiff's acting third-line supervisor but was neither involved in the decision to terminate her nor the official who made the decision (ECF No. 1-6 at 4)—did not know the reason for her termination and the fact that Agency officials provided a more robust explanation for Plaintiff's termination in connection with administrative proceedings than they did in her termination letter as demonstrating that the Agency was some combination of "evasive," "[in]coherent," and shifting in its justifications.  Pl's Opp'n (ECF No. 18) at 19-21.  This argument fails for several reasons.

The fact that the termination letter—which was issued during Plaintiff's two-year trial period and before Chapter 75 protections attached—stated simply that "retaining you is not

---

[2]    Plaintiff also relies at times on decisions, such as *Figeroa v. Pompeo*, 923 F.3d 1078 (D.C. Cir. 2019), addressing the government's burden at the summary judgment phase.  Though not completely irrelevant at the motion to dismiss stage, these decisions do not address the question of whether a plaintiff met his or her initial pleading burden.

appropriate" (ECF No. 1-5) does not make it inconsistent with then-Acting Director Owen's subsequent assertion in an attachment to her EEO affidavit that Plaintiff was terminated pursuant to Article II of the Constitution, followed by a discussion of tax and driving issues (which include driving under the influence of alcohol) in Plaintiff's background (ECF No. 1-7). Plaintiff was in her trial period and, therefore, the Agency was not required to provide the processes to which permanent employees are statutorily entitled—as reflected in the minimal explanation contained in her termination letter.[3] Federal employees who are within their probationary or trial periods have significantly fewer rights than those who continue to be employed after that period. For example, probationary employees cannot appeal their terminations to the Merit Systems Protection Board. Executive Order 14284, Strengthening Probationary Periods in the Federal Service, 90 FR 17729 (April 24, 2025); OPM Memorandum, "Updated Guidance on President Trump's Executive Order *Strengthening Probationary Periods in the Federal Service*," August 7, 2025 ("OPM Mem."), *available* *at* https://www.opm.gov/chcoc/transmittals/2025/Supplemental%20Guidance%20on%20Probationary%20Trial%20Periods%208-7-2025.pdf (last visited Jun. 5, 2026). Employees whose employment is not going to be extended beyond the end of the probationary or trial period are not entitled to notification of that fact, or to an explanation of why it is not being extended; their

---

[3]    A trial period is required for the excepted service. 5 U.S.C. § 7511(a)(1)(C); 5 C.F.R. § 11.3(a) ("The first year of continuous service in the same or similar position of a preference eligible in the excepted service, or the first 2 years of continuous service in the same or similar position of an individual in the excepted service (other than a preference eligible), is a trial period"); *see also* OPM: Appendix A: Q&As on the New Probationary Requirements under the President's EO titled, "Strengthening Probationary Periods in the Federal Service (08/07/25), *available* *at* https://www.opm.gov/chcoc/transmittals/2025/Supplemental%20Guidance%20on%20Probationary%20Trial%20Periods%208-7-2025.pdf (last visited June 8, 2026).

employment comes to an end with the expiration of the probationary or trial period, by operation of law. OPM Mem. at 6; 5 C.F.R. §§ 11.5(a), 11.5(d).

In addition, under regulations implementing 5 U.S.C. chapter 75, the adverse action appeal process before the MSPB does not apply to a "[t]ermination of appointment on the expiration date specified as a basic condition of employment at the time the appointment was made."  5 C.F.R. § 752.401(b)(11).  As Plaintiff was appointed for a trial period not to exceed twenty-four months, she did not possess MSPB appeal rights upon her termination, as the expiration of a term appointment is not an action appealable to the MSPB.  *See*, *e.g.*, *Endermuhle v. Dep't of Treasury,* No. SE-0752-00-0338-I-1, 89 M.S.P.R. 495. 498-99, 2001 WL 1089544 (M.S.P.B. Aug. 31, 2001); *Law v. Dep't of the Navy,* No. SE-3443-97-0399-I-1, 77 M.S.P.R. 474, 476, 1998 WL 39272 (M.S.P.B. Jan. 27, 1998); 5 C.F.R. § 752.401(b)(11).

Plaintiff was provided with more notice and explanation than the law required and the additional details provided by the Agency during the administrative phase do not contradict the initial letter.  Moreover, the fact that then-Acting Director Owen did not use the word "because" in the affidavit explaining the reasons for Plaintiff's termination does not make the explanation "evasive" or non-existent.  Pl's Opp'n (ECF No. 18) at 19; *see also id.* at 23 (arguing that "the Acting Director of EOIR refused to explain why Nemer was fired in response to an inquiry from an EEO investigator, instead providing an evasive response").

Finally, Plaintiff's conclusory assertion that "the process used to fire Nemer was rushed and deviated from the normal procedure," Pl's Opp'n (ECF No. 18) at 21, is supported by no non-conclusory allegations of fact giving rise to the inference that there was any Agency policy that was not followed, *see* Compl. (ECF No. 1).  The closest that Plaintiff comes is to assert that "[h]istorically, before an immigration judge is terminated, a memorandum is provided to a senior

Department of Justice official regarding the termination and articulating the justification for that action." Compl. (ECF No. 1) ¶ 46. However, Plaintiff does not allege that the alleged policy applied to Immigration Judges still within their trial periods and, as demonstrated, Plaintiff was not entitled to any process in connection with her termination because she was in her trial period.[4]

Ultimately, Plaintiff rests her argument on the contention that she has stated a claim because she alleged that she was not terminated for poor performance or the elimination of her position. Pl's Opp'n (ECF No. 18) at 17 (citing *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). This argument again overlooks the fact that Plaintiff was in her trial period at the time she was terminated, and the Agency was not required to provide any reason—let alone detailed reasons—for her termination. As demonstrated by the documents Plaintiff attached to her Complaint, she was terminated because the Agency found that it was no longer appropriate to employ her and she had a history of issues with her taxes and driving record (including driving under the influence). Plaintiff alleges that the termination was actually because of her sex and national origin, but those allegations are conclusory and implausible—and do not raise an inference of causation. Plaintiff's Title VII claims (Counts One and Two) should be dismissed.

## II.   Plaintiff Has Not Stated a First Amendment Claim

As demonstrated by Defendants' Motion, Plaintiff has also failed to plausibly allege that she was terminated because of her prior political associations in violation of the First Amendment. Defs' Mot. (ECF No. 15) at 15-24 (citing *Pickering v. Bd. of Ed.,* 391 U.S. 563 (1968); *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507, 517 (1980); *Hall v. Ford*, 856 F.2d

---

[4]   Moreover, Defendant, in fact, did generate a memorandum to a senior Department of Justice official regarding the termination and articulating the justification for that action, and that senior official—i.e. the Acting Attorney General—made the decision to terminate her. Thus, even if there were such a policy or practice, Defendant followed it in Plaintiff's case.

255, 261-63 (D.C. Cir. 1988)).  Defendant explained that, as a threshold matter, the complaint contains no allegations of fact supporting the otherwise implausible conclusion that her history of running for office as a Democrat was a factor in Defendants' decision to terminate her.  Defs' Mot. (ECF No. 15) at 15.  As Defendant noted, Plaintiff's claim rests upon her assertion that it was "well known within the Department" that she had previously run for office as a Democrat, *id.* at 15-16 (citing Compl. (ECF No. 1) ¶ 5, 29), and she does not plausibly allege that either of the officials involved in her removal—the Acting EOIR Director and the Acting Attorney General—knew anything about her or her political history, *id.* at 16-17.[5]

In her Opposition, Plaintiff paints her allegations as being more robust than they are, pointing to an allegation that her "campaign for municipal judge [was] documented in her personnel file and background investigation materials [was] accessible to Department decision-makers" and doubling-down on her speculative assertion that a comment by Judge Hunsucker about living in the same city as Plaintiff meant that he knew she had run for office as a Democrat. Pl's Opp'n (ECF No. 18) at 29 (citing Compl. (ECF No. 1) ¶¶ 36, 82).  Plaintiff asks the Court to infer that that two deciding officials (who had never met Plaintiff) identified her out of thousands of employees and combed through her personnel file to determine her political affiliation before terminating her based on the Complaint's assertion that information was available to decision-makers and the speculative "underst[anding]" that Judge Hunsucker (who Plaintiff does not allege made the decision to terminate her) knew about her political affiliation.  This is a stretch (to say the least) and the Complaint's allegations are insufficient to state a claim.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007) (holding that, where a complaint pleads facts that are "merely

---

[5]    As noted in Defendants' Motion, the Department of Justice has over 115,000 employees and the Agency has over 2,000.  The idea that any characteristic of any individual employee would be well known within the Department or EOIR is implausible.

consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief'").

In response, Plaintiff's Opposition asserts that she "need not include specific allegations conclusively establishing that [responsible management officials] had such knowledge at the motion-to-dismiss stage." Pl's Opp'n (ECF No. 18) at 29. Defendant did not argue that Plaintiff was required to conclusively establish knowledge of her political affiliation on the part of the decision makers. *See* generally, Defs' Mot. (ECF No. 15). A fair reading of Plaintiff's Complaint reveals an absence of any indication whatsoever that either of the two responsible management officials knew she was a Democrat. In addition, for the reasons discussed above, the Complaint does not plausibly allege (as opposed to making conclusory assertions) that the process through which Plaintiff was terminated was aberrant or that there was a termination policy that was violated.

Next, Defendants' Motion demonstrated that, under the Supreme Court's *Pickering-Elrod-Branti* jurisprudence regarding First Amendment claims, Plaintiff's speech (here, in the form of her political affiliation) was not entitled to protection because she was in a position in which she implemented policy and served at the behest of policymaking officials such as the Attorney General. Defs' Mot. (ECF No. 15) at 17-24. As explained in Defendants' Motion, in the case of employees in positions with broad responsibilities regarding policy formulation, implementation, or enunciation, courts must assess "whether the government interest in accomplishing its organizational objectives through compatible policy level deputies is implicated by the employee's speech" on policy areas for which the employee is responsible. *Id.* at 17-20 (citing *Hall*, 856 F.2d at 262-63). This rule is derived from the *Elrod-Branti* line of cases, which deal directly with political affiliation, though it has been applied to cases dealing with broader exercises of speech.

*Id.* Defendant went on to explain that the position of Immigration Judge contained significant policy responsibilities and, thus, had fewer First Amendment protections. *Id.* at 22-24 (citing 8 C.F.R. § 1003.10; *Pearson v. D.C.*, 644 F. Supp. 2d 23, 44 (D.D.C. 2009), aff'd, 377 F. App'x 34 (D.C. Cir. 2010)).

Plaintiff resists this conclusion by pointing to a statement by the D.C. Circuit in a Freedom of Information Act case to the effect that Immigration Judges are career civil servants and a statement from the former-Acting Director that they are not policy advocates. Pl's Opp'n (ECF No. 18) at 32. But "policy-level employees" for the purposes of First Amendment analysis include not just "policymakers," but also those who "implement" policy, including "key deputies" and "confidential" employees who serve at the behest of the policymaking official. *Hall*, 856 F.2d at 262-265. As demonstrated by Defendant's Motion, Immigration Judges have broad authority in their application of the nation's immigration laws and serve at the behest of policymaking officials such as the Attorney General. Defs' Mot. (ECF No. 15) at 22-23; *see also Arizona v. United States,* 567 U.S. 387, 395-96 (2012); *Jackler & Jaroch Consolidation, v. Dep't of Just., et al.*, No. CF-0752-26-0069-I-1, 2026 WL 789485 at *8 (M.S.P.B. Mar. 20, 2026)). Thus, their First Amendment rights as federal employees are limited. *Cf. Hall*, 856 F.2d at 262-265; *Pearson*, 644 F. Supp. 2d at 37, 42.

Finally, *Horne v. MSPB*, 684 F.2d 155, 158 (D.C. Cir. 1982), to which Plaintiff cites, is not dispositive of this case. In *Horne*, the D.C. Circuit vacated and remanded for further proceedings a case regarding the demotion of two career attorneys at the Interstate Commerce Commission to the agency after determining that the justification for the action that the agency had argued in front of MSPB was not actually offered at the time of the contested action. *Horne*, 684 F.2d at 158-59. The court decided that remand was necessary because the plaintiffs might

have had rights (including First Amendment rights) that might have been relevant in the demotion decision. *Id.* As part of that discussion, the court noted that "[c]ivil service regulations suggest that petitioners in this case are not political employees" and, thus, "the First Amendment may protect them against some actions by their employer." *Id.* at 158. In a footnote, the court noted the difference between positions falling under Schedule A (including "(p)ositions other than those of a confidential or policy-determining character") and Schedule C ("(p)ositions of a confidential or policy-determining character") of the Civil Service Reform Act. *Id.* n.7. The court then stated that "[a]ttorneys, like petitioners here, are listed under Schedule A, suggesting that they are not political employees." *Id.*

This discussion, which is over forty years old, is hardly a definitive statement that administrative judges operating in another agency in 2025 did not occupy positions implementing the policies of policymaking officials such that their First Amendment rights would properly be limited. Even as it pertained to the litigants in *Horne*, the court's statements were in the subjunctive mood and not determinative. Moreover, as the Supreme Court has noted, the law's understanding of the powers exercised by various officials and agencies evolves over time. *See Seila Law L.L.C. v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 216 n.2 (2020) ("The Court's conclusion that the FTC did not exercise executive power has not withstood the test of time."); *Morrison v. Olson*, 487 U.S. 654, 690, n.28 (1988) ("[I]t is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree."). Thus, assuming, arguendo, that Defendants were even aware of Plaintiff's political career, Defendants would have been justified in removing Plaintiff for speech which ran contrary to their policy goals, even if that was because of positions she championed as part of her prior campaign as an affiliate of the Democratic party.

### III.    Plaintiff's Termination Was a Proper Exercise of Article II Authority

As demonstrated by Defendants' Motion, even if Plaintiff had made out a *prima facie* case under Title VII or had stated a First Amendment claim (which she did not), her status as an inferior officer of the United States exercising significant executive power and discretion as an Immigration Judge means that she could be removed without cause under Article II of the Constitution. Defs' Mot. (ECF No. 15) at 24-31 (citing *Myers v. United States*, 272 U.S. 52, 119 (1926); *Seila Law*, 591 U.S. at 203; *Kennedy v. Braidwood Management*, 606 U.S. 748, 763 (2025)). And Immigration Judges do not fit either of the "only two exceptions" the Supreme Court has recognized that allow Congress to deviate from the general rule against unrestricted removal for inferior officers. *Seila Law*, 591 U.S. at 204; *see* Defs' Mot. (ECF No. 15) at 26-30.

Plaintiff's Opposition *concedes* that she is an inferior officer for the purposes of the Appointments Clause. Pl's Opp'n (ECF No. 18) at 37 ("The parties agree that immigration judges are "inferior officers" within the meaning of Article II."). But then Plaintiff takes a selective reading of relevant precedent to argue (a) that she was not subject to Article II removal by the Attorney General and (b) that a parade of terribles will follow if the Court finds in favor of Defendants. Pl's Opp'n (ECF No. 18) at 33-44. Neither is true. Stripped to its core, the Parties' dispute on the issue of Article II removal power reduces to the question of whether an Immigration Judge has limited powers akin to the independent prosecutor in *Morrison*, 487 U.S. at 685-93 or something broader that puts the Immigration Judge in the category of executive officers for whom the Supreme Court has found removal restrictions to be unconstitutional, *see Seila Law*, 591 U.S. at 204 (declining to extend the scope of officers for whom limits on presidential removal powers were permissible to include the director of an independent agency that wielded significant executive power). As demonstrated and discussed in further detail below, Immigration Judges fall into the latter category, not the former.

As a threshold matter, Plaintiff's attempt to minimize the scope of the authority in *Seila Law* by calling it "dictum" (Pl's Opp'n (ECF No. 18) at 40), lacks merit.  The Supreme Court in *Seila Law* defined the scope of situations in which removal restrictions are permissible and then declined to extend it.  *Seila Law*, 591 U.S. at 204, 217-18. The Supreme Court's distillation of existing precedent is not dicta.  In any event, the discussion in *Seila Law* was carefully considered and lower courts "must obey 'carefully considered language of the Supreme Court, even if technically dictum.'" *Winslow v. FERC*, 587 F.3d 1133, 1135 (D.C. Cir. 2009) (quoting *United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006)); *see also Marin Audubon Soc'y v. Fed. Aviation Admin.*, 121 F.4th 902, 913 (D.C. Cir. 2024) (same).

Next, as noted, Plaintiff agrees that, as an Immigration Judge, she was an inferior officer for the purposes of the Appointments Clause.  Pl's Opp'n (ECF No. 18) at 34.[6]  After determining that, the question is whether Plaintiff falls within the second exception to the general rule that an executive branch officer must be removable at will: "inferior officers with limited duties and no policymaking or administrative authority" for whom it is permissible to restrict the President's removal power. Defs' Mot. (ECF No. 15) at 26-30 (citing *Seila Law*, 591 U.S. at 215-20); *Seila Law*, 591 U.S. at 218.  As explained in Defendants' Motion, the Supreme Court found removal restrictions permissible in the case of an independent prosecutor whose jurisdiction was limited to investigating and prosecuting specific matters referred to him by the Attorney General.  Defs' Mot. (ECF No. 15) at 28 (citing *Morrison*, 487 U.S. at 660-63).  However, the default rule is that the President has power to remove those who wield executive power on his behalf (*Myers*, 272 U.S. 52), so inferior officers who exercise powers broader than those of the independent prosecutor can

---

[6]    Plaintiff's Opposition also does not argue that Immigration Judges fall into the exception to at will removal identified by *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). *See generally*, Pl's Opp'n (ECF No. 18).

be removed at will (*Seila Law*, 591 U.S. at 217-18).  Immigration judges exercise independent judgment and discretion in conducting hearings and issue decisions that are subject to only limited appellate review—thus they fall into the latter category and are removable at will.  Defs' Mot. (ECF No. 15) at 28-29 (citing 8 U.S.C. § 1229a(a)(1); *Arizona*, 567 U.S. at 395-97; *Jackler*, 2026 WL 789485).

In her Opposition, Plaintiff argues that, in her role as an Immigration Judge, she was more analogous to the prosecutor in *Morrison*.  Pl's Opp'n (ECF No. 18) at 40-43.  Plaintiff's argument downplays the power she had—and overplays the level of supervision to which she was subject— as an Immigration Judge.  Immigration Judges are vested by statute with power to "conduct proceedings for deciding the inadmissibility or deportability of an alien."  8 U.S.C. § 1229a(a)(1). They "exercise their independent judgment and discretion and may take any action consistent with their authorities under the Act and regulations that is necessary or appropriate for the disposition or alternative resolution of such cases." 8 C.F.R. § 1003.10(b).  Immigration Judges wield significant executive authority, including the authority to order individuals removed from the United States. *See generally* 8 U.S.C. § 1229a. Such power is not like the *Morrison* prosecutor which, as the Supreme Court observed in *Seila Law*, "was trained inward to high-ranking Governmental actors identified by others, and was confined to a specified matter in which the Department of Justice had a potential conflict of interest." *Seila Law*, 591 U.S. at 219.  In addition, the tenure of the independent counsel in *Morrison* ended when she "completed or substantially completed any investigations or prosecutions undertaken pursuant to the [Ethics in Government Act of 1978]." *Morrison*, 487 U.S. at 664.  By contrast, an Immigration Judge who has completed

her probationary period has no fixed tenure. This further distinguishes Plaintiff's situation from the independent counsel in *Morrison*.[7]

Plaintiff attempts to minimize such broad discretion, policymaking, and administrative authority held by Immigration Judges by citing regulatory provisions that the Attorney General may refer decisions to himself or herself. 8 C.F.R. § 1003.1(h)(1). But it would be impossible for the Attorney General to refer all of the tens of thousands of cases heard by Immigration Judges to himself. Moreover, the Attorney General's authority to refer decisions does not mean that Immigration Judges lack "substantial authority" in the first instance, that they do not possess "more than limited duties," or that the finality of a decision is dispositive of the existence of policymaking or administrative authority. *See* 8 C.F.R. § 1003.1(d)(7).

In another case regarding the level of authority exercised by Administrative Law Judges, the Supreme Court explained that it is the "significance" of the "authority" that administrative judges wield, not the finality of any decision, that carries import. *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 247-51(2018).[8] A focus on the finality or the fact that the Attorney General may refer decisions to himself or herself "ignore[s] the significance of the duties and discretion that [administrative judges] possess." *Lucia*, 585 U.S. at 247. Indeed, "[i]n the course of carrying out these important functions, the [administrative judges] exercise significant discretion" and "[t]hat fact meant they were officers, even when their decisions were not final." *Id.* Immigration Judges

---

[7]     Though it is true that the cadet in *United States v. Perkins,* 116 U.S. 483 (1886) did not have a limited tenure like the independent counsel in *Morrison*, Immigration Judges (as demonstrated) have vastly broader powers than a cadet engineer in the Navy.

[8]     *Lucia* decided whether the Administrative Law Judges at issue were "officers" for the purposes of Appointments Clause requirements, not whether they were removable at will. *Lucia*, 585 U.S. at 244 n.1. Nonetheless, its discussion of how to evaluate the authority wielded by these officials is instructive.

possess broad authority, as they "shall exercise their independent judgment and discretion and may take any action consistent with their authorities under the Act and regulations that is necessary or appropriate for the disposition or alternative resolution of such cases." 8 C.F.R. § 1003.10(b).

In addition, as Defendants have already described, Immigration Judges do issue decisions that become the final decision of the United States, for example credible-fear determinations in expedited removal proceedings (*see* 8 U.S.C. § 1225(b)(1)(B)(iii)(III)), ordering a non-citizen's removal from the United States in absentia, and where a non-citizen does not appeal an immigration judge's removal decision. *See* Defs' Mot. (ECF No. 15) at 28 n.14. Plaintiff contends that there is "no Article II concern" with those types of decisions because the "immigration judge has ruled for the *government*." Pl's Opp'n (ECF No. 18) at 42 (emphasis in original). Plaintiff includes no citation for the proposition that somehow exercising substantial executive power in the government's favor creates an exception to at-will removal. And in the case of credible fear determinations in expedited removal, an Immigration Judge's decision to find credible fear prevents the government from subjecting non-citizens to expedited removal and requires that the government consider their applications for asylum. *See* 8 U.S.C. § 1225(b)(1)(B)(ii).

Moreover, *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021) does not support Plaintiff's position. The Supreme Court in *Arthrex* allowed administrative patent judges to retain for-cause removal protections, as their decisions are subject to review by the Director of the U.S. Patent and Trademark Office. *Arthrex*, 594 U.S. at 26 (2023). The limited and conditional review of Immigration Judge decisions—and (in some situations) the lack of final review at all—makes this case distinguishable from *Arthrex*. While it is true that the many decisions of Immigration Judge are subject to review by both the Board of Immigration Appeals and the Attorney General, 8 C.F.R. §§ 1003.1(h)(1)(i), 1003.10(c), the decisions of an Immigration Judge could still become the final

decisions of the United States if not appealed.    8 U.S.C. § 1101(a)(47)(B)(ii); 8 C.F.R. § 1241.1.  Additionally, even if a non-citizen does appeal a decision, that right to appeal may be limited in scope.  Thus, many circumstances exist—including all removal orders issued in absentia and all denials of credible fear reviews—where an Immigration Judge's decision will remain the final decision of the United States. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 1003.1(b).  And as discussed *supra*, other Immigration Judge decisions are also final without further review.

Finally, Plaintiff's suggestion that the government's position would lead to a parade of at-will terminations is overwrought.  Pl's Opp'n (ECF No. 18) at 11 ("Make no mistake: Accepting Defendants' sweeping constitutional arguments in this case would spell the end for the professional, non-partisan civil service").   The MSPB was clear in *Jackler* that its holding that Article II prevented removal restrictions on Immigration Judges was both consistent with *Perkins* and "does not mean that an agency can deprive the Board of jurisdiction over an adverse action merely by invoking Article II authority." *Jackler*, 2026 WL 789485, at *9.  Specifically, "[a]n individual who otherwise meets the definition of an employee under 5 U.S.C. § 7511 is entitled to come before the Board for a determination of whether the section 7513 protections apply." *Id.*  In addition, the MSPB was clear that, in the case of "inferior officers with limited duties and no policymaking or administrative authority[,]" "statutory removal restrictions are constitutionally permissible, and [the MSPB has] jurisdiction to review [an] agency's removal actions." *Id.* at *7. Thus, a decision that inferior officers who exercise considerable executive authority with limited review are removable at will does not bode the end of the civil service as we know it.

## IV.    Plaintiff's Declaratory Judgment Claim Should Be Dismissed

As demonstrated by Defendants' Motion, Plaintiff cannot pursue her Count Four claim for declaratory relief separate from an independently viable claim for relief.  Defs' Mot. (ECF No. 15) at 31-32 (citing 28 U.S.C. § 2201(a); *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011); *Maynard*

*v. Architect of the Capitol,* 544 F. Supp. 3d 64, 77 (D.D.C. 2021)).  Plaintiff's Opposition does not appear to dispute that Count Four cannot survive if she has otherwise failed to state some substantive claim in Counts One, Two, or Three.  *See* Pl's Opp'n (ECF No. 18) at 44 (arguing that the declaratory judgment claim survives because Plaintiff believes that she has stated Title VII and First Amendment claims).  Thus, Count Four rises or falls with Counts One, Two, and Three.  For the reasons explained above, Count Four should be dismissed along with Plaintiff's Title VII and First Amendment claims.

### V.    Plaintiff Is Not Entitled To Mandamus Relief

As demonstrated by Defendants' Motion, Plaintiff's Count Five claim for mandamus should be dismissed because she did not plausibly allege that she has a clear right to reinstatement or that Defendants have a clear duty to reinstate her, and separation of powers considerations prevent a court from ordering the President to reinstate an inferior officer such as Plaintiff.  Defs' Mot. (ECF No. 15) at 32-34 (citing 28 U.S.C. §1361; *Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983); *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)).  In her Opposition, Plaintiff (who chose to plead a separate count for mandamus, rather than simply request it as part of her prayer for relief), essentially ignores the fact that the Complaint did not demonstrate a right to reinstatement or a duty to reinstate.  Pl's Opp'n (ECF No. 18) at 44-46.  Instead, Plaintiff argues that "it is far too early to resolve the mandamus claim." *Id.* at 45.  Plaintiff is incorrect.  The elements of a mandamus claim are jurisdictional, *Am. Hosp. Ass'n*, 812 F.3d at 189, and it is a plaintiff's burden to demonstrate jurisdiction, *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) ("Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction.").

Having failed to address Defendants' argument that the Complaint does not sufficiently allege that she has a clear right to reinstatement or that Defendants have a clear duty to reinstate

- 17 -

her, Plaintiff has conceded the issue. *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014); *see  also Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries,* 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (Walton, J.) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citations omitted)), *aff'd* 98 Fed. Appx. 8 (D.C. Cir. 2004).  Plaintiff has not met her burden of demonstrating that the Court has jurisdiction over her mandamus claim (Count Five) and it should be dismissed.

*    *    *

**CONCLUSION**

For these reasons, Plaintiff's Complaint should be dismissed.

Dated:  June 8, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By:  _____*/s/ Sian Jones*_____
    SIAN JONES, D.C. Bar #1024062
    Assistant United States Attorney
    601 D Street, NW
    Washington, D.C., 20530
    (202) 252-2578

*Attorneys for the United States of America*